# Exhibit A

# Commonwealth of Massachusetts



SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 11-1533

Federal Home Loan Bank of Boston

_____, Plaintiff(s)

v.

Residential Funding Company, LLC f/k/a Residential Funding Corporation; UBS Real Estate
Securities Inc.; UBS Securities LLC; WaMu Capital Corp.

_____, Defendant(s)

## SUMMONS

To the above-named Defendant:

Thomas G. Shapiro, Shapiro Haber

You are hereby summoned and required to serve upon _____
& Urmy LLP

plaintiff's attorney, whose address is ___53 State Street, Boston, MA___ , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the __twenty-first__ day of
__April__ , in the year of our Lord two thousand __eleven__ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 11/10

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a
defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the
original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200____, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____, 200____          _____

**N.B.   TO PROCESS SERVER:—**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

_____, **200** .

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _____

_____, Plff(s).

v.

_____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 11-1533

Federal Home Loan Bank of Boston , Plaintiff(s)

v.

J.P. Morgan Securities LLC f/k/a Bear, Stearns & Co. Inc. and J.P. Morgan Securities Inc.
GMAC Mortgage Group, LLC f/k/a GMAC Mortgage Group, Inc.

, Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Thomas G. Shapiro, Shapiro Haber & Urmy LLP

plaintiff's attorney, whose address is 53 State Street, Boston, MA 02109 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the twenty-first day of April , in the year of our Lord two thousand eleven .

Michael Joseph Donovan

Clerk/Magistrate

A true copy Attest:

Deputy Sheriff Suffolk County

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF— (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 11/10

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

Dated:_____, 200____.               _____

**N.B.    TO PROCESS SERVER: –**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

┌──────────────────────────────────────────┐
│                                  , 200  . │
└──────────────────────────────────────────┘

**Commonwealth of Massachusetts**

SUFFOLK, ss.                    SUPERIOR COURT DEPARTMENT
                                OF THE TRIAL COURT
                                CIVIL ACTION
                                No. _____

_____, Plff(s).

v.

_____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 11-1533

Federal Home Loan Bank of Boston , Plaintiff(s)

v.

CWMBS, Inc.; DB U.S. Financial Market Holding Corporation; Deutsche Alt-A Securities, Inc.; J.P. Morgan Acceptance Corporation I; J.P. Morgan Mortgage Acquisition Corp. , Defendant(s)

## SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:

You are hereby summoned and required to serve upon ___ Thomas G. Shapiro, Shapiro Haber & Urmy LLP

plaintiff's attorney, whose address is ___ 53 State Street, Boston, MA 02109 ___ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the ___ twenty-first ___ day of ___ April ___ , in the year of our Lord two thousand ___ eleven ___ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF— (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 11/10

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

Dated:_____, 200____                    _____

**N.B.   TO PROCESS SERVER: –**
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

5/2/11                    , 200 .

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT .
OF THE TRIAL COURT
CIVIL ACTION
No. _____

_____, Plff(s).

v.

_____, Deft(s).

**SUMMONS**
(Mass. R. Civ. P. 4)

. (AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 11-1533

Federal Home Loan Bank of Boston , Plaintiff(s)

v.

CWMBS, Inc.; DB U.S. Financial Market Holding Corporation; Deutsche Alt-A Securities, Inc.; J.P. Morgan Acceptance Corporation I; J.P. Morgan Mortgage Acquisition Corp. , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Thomas G. Shapiro, Shapiro Haber & Urmy LLP

plaintiff's attorney, whose address is 53 State Street, Boston, MA 02109 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the twenty-first day of April , in the year of our Lord two thousand eleven .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 11/10

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

Dated:_____, 200_____.          _____

**N.B.   TO PROCESS SERVER: –**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

5/2/11          , 200 .

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT .
OF THE TRIAL COURT
CIVIL ACTION
No. _____

_____, Plff(s).

v.

_____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 11-1533

Federal Home Loan Bank of Boston , Plaintiff(s)

v.

Deutsche Bank Securities Inc.; EMC Mortgage Corporation; Goldman, Sachs & Co.; Impac Funding Corporation; JPMorgan Chase & Co.; Merrill Lynch Mortgage Lending, Inc.
, Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Thomas G. Shapiro, Shapiro Haber & Urmy LLP

plaintiff's attorney, whose address is 53 State Street, Boston, MA 02109 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the twenty-first day of April , in the year of our Lord two thousand eleven .

*Michael Joseph Donovan*

A true copy Attest:

Sheriff Suffolk County

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 11/10

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                           SUPERIOR COURT DEPARTMENT

FEDERAL HOME LOAN BANK OF          Civil Action No.:    **11 - 1533**
BOSTON,

                     Plaintiff,

         v.                          **COMPLAINT FOR RESCISSION AND
                                     DAMAGES AND DEMAND FOR JURY
                                     TRIAL**

ALLY FINANCIAL, INC. F/K/A GMAC
LLC; BANC OF AMERICA FUNDING
CORPORATION; BANK OF AMERICA
CORPORATION; BANK OF AMERICA,
NATIONAL ASSOCIATION; BARCLAYS
CAPITAL INC.; BARRY J. O'BRIEN;
BCAP LLC; BEAR STEARNS ASSET
BACKED SECURITIES I LLC; CAPITAL
ONE FINANCIAL CORPORATION;
CAPITAL ONE, NATIONAL
ASSOCIATION; CHEVY CHASE
FUNDING LLC; CHRISTOPHER M.
O'MEARA; CITICORP MORTGAGE
SECURITIES, INC.; CITIGROUP
FINANCIAL PRODUCTS, INC.;
CITIGROUP GLOBAL MARKETS INC.;
CITIGROUP GLOBAL MARKETS
REALTY CORP.; CITIGROUP INC.;
CITIGROUP MORTGAGE LOAN TRUST
INC.; CITIMORTGAGE, INC.;
COUNTRYWIDE FINANCIAL
CORPORATION; COUNTRYWIDE HOME
LOANS, INC.; COUNTRYWIDE
SECURITIES CORP.; CREDIT SUISSE
(USA), INC.; CREDIT SUISSE FIRST
BOSTON MORTGAGE SECURITIES
CORP.; CREDIT SUISSE HOLDINGS
(USA), INC.; CREDIT SUISSE
SECURITIES (USA) LLC; CWALT, INC.;
CWMBS, INC.; DB STRUCTURED
PRODUCTS, INC.; DB U.S. FINANCIAL
MARKET HOLDING CORPORATION;
DEUTSCHE ALT-A SECURITIES, INC.;

RECEIVED
APR 20 2011
SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 11-1533

Federal Home Loan Bank of Boston , Plaintiff(s)

v.

Deutsche Bank Securities Inc.; EMC Mortgage Corporation; Goldman, Sachs & Co.; Impac Funding Corporation; JPMorgan Chase & Co.; Merrill Lynch Mortgage Lending, Inc. , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Thomas G. Shapiro, Shapiro Haber & Urmy LLP

plaintiff's attorney, whose address is 53 State Street, Boston, MA 02109 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the ___twenty-first___ day of ___April___, in the year of our Lord two thousand ___eleven___.

A true copy Attest:

*Michael Joseph Donovan*

John C. Ofc

Deputy Sheriff Suffolk County

Clerk/Magistrate

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 11/10

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                  SUPERIOR COURT DEPARTMENT

FEDERAL HOME LOAN BANK OF          Civil Action No.:        11 · 1533
BOSTON,

Plaintiff,

v.

ALLY FINANCIAL, INC. F/K/A GMAC          **COMPLAINT FOR RESCISSION AND**
LLC; BANC OF AMERICA FUNDING             **DAMAGES AND DEMAND FOR JURY**
CORPORATION; BANK OF AMERICA             **TRIAL**
CORPORATION; BANK OF AMERICA,
NATIONAL ASSOCIATION; BARCLAYS
CAPITAL INC.; BARRY J. O'BRIEN;                          RECEIVED
BCAP LLC; BEAR STEARNS ASSET
BACKED SECURITIES I LLC; CAPITAL                        APR 20 2011
ONE FINANCIAL CORPORATION;
CAPITAL ONE, NATIONAL                              SUPERIOR COURT - CIVIL
ASSOCIATION; CHEVY CHASE                          MICHAEL JOSEPH DONOVAN
FUNDING LLC; CHRISTOPHER M.                          CLERK / MAGISTRATE
O'MEARA; CITICORP MORTGAGE
SECURITIES, INC.; CITIGROUP
FINANCIAL PRODUCTS, INC.;
CITIGROUP GLOBAL MARKETS INC.;
CITIGROUP GLOBAL MARKETS
REALTY CORP.; CITIGROUP INC.;
CITIGROUP MORTGAGE LOAN TRUST
INC.; CITIMORTGAGE, INC.;
COUNTRYWIDE FINANCIAL
CORPORATION; COUNTRYWIDE HOME
LOANS, INC.; COUNTRYWIDE
SECURITIES CORP.; CREDIT SUISSE
(USA), INC.; CREDIT SUISSE FIRST
BOSTON MORTGAGE SECURITIES
CORP.; CREDIT SUISSE HOLDINGS
(USA), INC.; CREDIT SUISSE
SECURITIES (USA) LLC; CWALT, INC.;
CWMBS, INC.; DB STRUCTURED
PRODUCTS, INC.; DB U.S. FINANCIAL
MARKET HOLDING CORPORATION;
DEUTSCHE ALT-A SECURITIES, INC.;

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 11-1533

Federal Home Loan Bank of Boston , Plaintiff(s)

v.

Merrill Lynch, Pierce, Fenner & Smith Incorporated; Morgan Stanley & Co. Incorporated; Morgan Stanley Mortgage Capital Holdings, LLC; MortgageIT, Inc.; Nomura Securities
International, Inc.; The Bear Stearns Companies LLC f/k/a The Bear Stearns Companies Inc. , Defendant(s)

## SUMMONS

To the above-named Defendant:

Thomas G. Shapiro, Shapiro Haber

You are hereby summoned and required to serve upon
& Urmy LLP

plaintiff's attorney, whose address is 53 State Street, Boston, MA 02109 , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the twenty-first day of
April , in the year of our Lord two thousand eleven .

Michael Joseph Donovan

a true copy Attest

John Cotter
Deputy Sheriff Suffolk County

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER
FORM CIV.P. 1 3rd Rev. 10M - 11/10

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____, 200____.                    _____

N.B.   TO PROCESS SERVER: –
       PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
       THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

                                                              , 200  .

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _____

_____, Plff(s).

v.

_____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

11–1533

No. _____

Federal Home Loan Bank of Boston _____ , Plaintiff(s)

v.

Morgan Stanley; MortgageIT Securities Corp.; Nomura Holding America, Inc.;
Sandler O'Neill + Partners, L.P.; Structured Asset Mortgage Investments II Inc.

_____ , Defendant(s)

## SUMMONS

To the above-named Defendant:

    You are hereby summoned and required to serve upon Thomas G. Shapiro, Shapiro Haber & Urmy LLP

plaintiff's attorney, whose address is 53 State Street, Boston, MA 02109 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    Witness, Barbara J. Rouse, Esquire, at Boston, the twenty-first _____ day of April _____ , in the year of our Lord two thousand eleven _____ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER
FORM CIV.P. 1 3rd Rev. 10M - 11/10

*NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the the original in the Clerk's Office.*

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____, 200_____.                    _____


N.B.   TO PROCESS SERVER: –
       PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
       THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

5/2/11                    , 200  .

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _____

_____, Plff(s).

v.

_____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 11-1533

Federal Home Loan Bank of Boston _____ , Plaintiff(s)

v.

JPMorgan Securities Holdings LLC;, Merrill Lynch & Co., Inc.; Merrill Lynch Mortgage
Investors, Inc.; Moody's Corporation; Moody's Investors Service, Inc.
_____ , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Thomas G. Shapiro, Shapiro Haber & Urmy LLP _____ plaintiff's attorney, whose address is _____ 53 State Street, Boston, MA 02109 _____ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the twenty-first _____ day of April _____ , in the year of our Lord two thousand eleven _____ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 11/90

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____ _____, 200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

Dated:_____, 200_____

N.B.    TO PROCESS SERVER: –
        PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
        THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

5/2/11 , 200 .

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _____, Plff(s)

v.

_____, Deft(s)

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 11-1533

Federal Home Loan Bank of Boston , Plaintiff(s)

v.

Banc of America Funding Corporation; Bank of America Corporation; BCAP LLC; Bear Stearns Asset Backed Securities I LLC; CWALT, Inc. , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Thomas G. Shapiro, Shapiro Haber & Urmy LLP

plaintiff's attorney, whose address is 53 State Street, Boston, MA 02109 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the twenty-first day of April , in the year of our Lord two thousand eleven

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER
FORM CIV.P. 1 3rd Rev. 10M - 11/10

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____, 200____.                    _____

**N.B.    TO PROCESS SERVER: –**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

4|29|11                    , 200 .

**Commonwealth of Massachusetts**

SUFFOLK, ss.                    SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _____

_____, Plff(s).

v.

_____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

| CIVIL ACTION COVER SHEET | DOCKET NO(S) B.L.S. 11 - 1 5 3 3 | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) Federal Home Loan Bank of Boston | DEFENDANT(S) Ally Financial Inc., et al. |
|---|---|

| ATTORNEY FIRM NAME ADDRESS AND TELEPHONE Thomas G. Shapiro, Shapiro Haber & Urmy LLP, 53 State Street, Boston, MA 02109 | ATTORNEY (if known) RECEIVED APR 20 2011 SUPERIOR COURT CIVIL MICHAEL JOSEPH DONOVAN CLERK / MAGISTRATE |
|---|---|

|  | Origin Code Original Complaint |
|---|---|

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BB.2 | Securities Transactions | (B) | (X) Yes ( ) No |

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

This matter warrants acceptance into the Business Litigation session because this action falls within the category of cases that may be accepted into the BLS [claims relating to or arising out of securities transactions].

The Complaint is for rescission and damages arising from the sale by certain defendants to the Plaintiff of over $5.9 billion in triple-A rated Private Label Mortgage-Backed Securities originated by numerous different entities. Plaintiff's Complaint asserts claims against 90 defendants comprised of sellers, sponsors, depositors/issuers, underwriters of the securities, as well as individuals, controlling person defendants, successor liability defendants and rating agency defendants. The Complaint alleges that the offering memoranda issued in connection with each sale of the various mortgage-backed securities contained numerous material untrue statements on which Plaintiff relied. It describes the securitization and ratings process and details how abandonment of underwriting and appraisal guidelines and standards by mortgage originators lead to defendants issuing loans that failed to ensure the borrowers' ability to pay and without sufficient collateral. As a consequence, the fair value of the securities plunged, ultimately resulting in hundreds of millions of dollars in losses to the Federal Home Loan Bank of Boston.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judical Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record_____ DATE: 04/20/2011

# CIVIL ACTION COVER SHEET
## INSTRUCTIONS

## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

BA.1 claims relating to the governance and conduct of internal affairs of entities

BA.2 claims relating to employment agreements

BA.3 claims relating to liability of shareholders, directors, officers, partners, etc.

BB.1 shareholder derivative claims

BB.2 claims relating to or arising out of securities transactions

BC.1 claims involving mergers, consolidations, sales of assets, issuance of debt, equity and like interests

BD.1 claims to determine the use or status of, or claims involving, intellectual property

BD.2 claims to determine the use or status of, or claims involving, confidential, propriety or trade secret information

BD.3 claims to determine the use or status of, or claims involving restrictive covenants

BE.1 claims involving breaches of contract or fiduciary, fraud, misrepresentation business torts or other violations involving business relationships

BF.1 claims under the U.C.C. involving complex issues

BG.1 claims arising from transactions with banks, investment bankers and financial advisers, brokerage firms, mutual and money funds

BH.1 claims for violation of antitrust or other trade regulation laws

BH.2 claims of unfair trade practices involving complex issues

BI.1 malpractice claims by business enterprises against professionals

BJ.1 claims by or against a business enterprise to which a government entity is a party.

BK.1 other commercial claims, including insurance, construction, real estate and consumer matters involving complex issues

## TRANSFER YOUR SELECTION TO THE FACE SHEET
### EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BD3 | Restrictive covenants | (B) | ☒Yes   ☐No |

**DUTY OF THE PLAINTIFF.** The plaintiff, or plaintiff's counsel, shall set forth, in the face sheet a statement specifying in full detail the facts upon which the plaintiff then relies for "presumptive" entry into the Business Litigation Session. A copy of the civil action cover sheet shall be served on all defendants, together with the complaint.

**DUTY OF THE DEFENDANT.** Should the defendant contest the entry into the Business Litigation Session, the defendant shall file with the answer (or dispositive motion) a statement specifying why the action does not belong in the Business Litigation Session. Such Statement shall be served with the answer (or dispositive motion).

A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.

FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCU-RATELY MAY RESULT IN THE TRANSFER OF THIS ACTION FROM THE BUSINESS LITIGATION SESSION TO ANOTHER APPROPRIATE SESSION OF THE SUPERIOR COURT.

* A special tracking order shall be created by the presiding justice of the Business Litigation Session at the Initial Rule 16 Conference.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT DEPARTMENT

FEDERAL HOME LOAN BANK OF
BOSTON,

Plaintiff,

v.

ALLY FINANCIAL, INC. F/K/A GMAC
LLC; BANC OF AMERICA FUNDING
CORPORATION; BANK OF AMERICA
CORPORATION; BANK OF AMERICA,
NATIONAL ASSOCIATION; BARCLAYS
CAPITAL INC.; BARRY J. O'BRIEN;
BCAP LLC; BEAR STEARNS ASSET
BACKED SECURITIES I LLC; CAPITAL
ONE FINANCIAL CORPORATION;
CAPITAL ONE, NATIONAL
ASSOCIATION; CHEVY CHASE
FUNDING LLC; CHRISTOPHER M.
O'MEARA; CITICORP MORTGAGE
SECURITIES, INC.; CITIGROUP
FINANCIAL PRODUCTS, INC.;
CITIGROUP GLOBAL MARKETS INC.;
CITIGROUP GLOBAL MARKETS
REALTY CORP.; CITIGROUP INC.;
CITIGROUP MORTGAGE LOAN TRUST
INC.; CITIMORTGAGE, INC.;
COUNTRYWIDE FINANCIAL
CORPORATION; COUNTRYWIDE HOME
LOANS, INC.; COUNTRYWIDE
SECURITIES CORP.; CREDIT SUISSE
(USA), INC.; CREDIT SUISSE FIRST
BOSTON MORTGAGE SECURITIES
CORP.; CREDIT SUISSE HOLDINGS
(USA), INC.; CREDIT SUISSE
SECURITIES (USA) LLC; CWALT, INC.;
CWMBS, INC.; DB STRUCTURED
PRODUCTS, INC.; DB U.S. FINANCIAL
MARKET HOLDING CORPORATION;
DEUTSCHE ALT-A SECURITIES, INC.;

Civil Action No.:       11 · 1533

**COMPLAINT FOR RESCISSION AND
DAMAGES AND DEMAND FOR JURY
TRIAL**

RECEIVED

APR 20 2011

SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

DEUTSCHE BANK SECURITIES INC.;
DLJ MORTGAGE CAPITAL, INC.;
EDWARD GRIEB; EMC MORTGAGE
CORPORATION; FITCH, INC.; GMAC
MORTGAGE GROUP LLC F/K/A GMAC
MORTGAGE GROUP, INC.; GOLDMAN,
SACHS & CO.; IMH ASSETS CORP.;
IMPAC FUNDING CORPORATION;
IMPAC MORTGAGE HOLDINGS, INC;
IMPAC SECURED ASSETS CORP.; J.P.
MORGAN ACCEPTANCE
CORPORATION I; J.P. MORGAN
MORTGAGE ACQUISITION CORP.; J.P.
MORGAN SECURITIES LLC F/K/A
BEAR, STEARNS & CO. INC . AND J.P.
MORGAN SECURITIES INC.; JAMES J.
SULLIVAN; JPMORGAN CHASE & CO.;
JPMORGAN SECURITIES HOLDINGS
LLC; KRISTINE SMITH; LANA FRANKS;
MARK L. ZUSY; MERRILL LYNCH &
CO., INC.; MERRILL LYNCH
MORTGAGE INVESTORS, INC.;
MERRILL LYNCH MORTGAGE
LENDING, INC.; MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED; MOODY'S
CORPORATION; MOODY'S INVESTORS
SERVICE, INC.; MORGAN STANLEY;
MORGAN STANLEY & CO. INC.;
MORGAN STANLEY CAPITAL I INC.;
MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC; MORTGAGE
ASSET SECURITIZATION
TRANSACTIONS, INC.; MORTGAGEIT
SECURITIES CORP.; MORTGAGEIT,
INC.; NOMURA ASSET ACCEPTANCE
CORPORATION; NOMURA CREDIT &
CAPITAL, INC.; NOMURA HOLDING
AMERICA, INC.; NOMURA SECURITIES
INTERNATIONAL, INC.; RBS
ACCEPTANCE INC. F/K/A GREENWICH
CAPITAL ACCEPTANCE, INC.; RBS
FINANCIAL PRODUCTS INC. F/K/A
GREENWICH CAPITAL FINANCIAL
PRODUCTS, INC.; RBS HOLDINGS USA
INC. F/K/A GREENWICH CAPITAL

HOLDINGS, INC.; RBS SECURITIES INC.
F/K/A GREENWICH CAPITAL
MARKETS, INC.; RESIDENTIAL
ACCREDIT LOANS, INC.; RESIDENTIAL
FUNDING COMPANY, LLC F/K/A
RESIDENTIAL FUNDING
CORPORATION; RICHARD MCKINNEY;
RICHARD S. FULD, JR.; SAMIR TABET;
SANDLER O'NEILL + PARTNERS, L.P.;
STANDARD & POOR'S FINANCIAL
SERVICES LLC; STRUCTURED ASSET
MORTGAGE INVESTMENTS II INC.;
THE BEAR STEARNS COMPANIES LLC
F/K/A THE BEAR STEARNS
COMPANIES INC.; THE MCGRAW-HILL
COMPANIES, INC.; UBS AMERICAS
INC.; UBS REAL ESTATE SECURITIES
INC.; UBS SECURITIES LLC; WAMU
CAPITAL CORP.; WELLS FARGO &
COMPANY; WELLS FARGO ASSET
SECURITIES CORPORATION; WELLS
FARGO BANK, NATIONAL
ASSOCIATION; and DEFENDANTS JOHN
DOE 1-50,

                                   Defendants.

**COMPLAINT FOR RESCISSION AND DAMAGES AND DEMAND
FOR JURY TRIAL**

## TABLE OF CONTENTS

### COMPLAINT FOR RESCISSION AND DAMAGES
### AND DEMAND FOR JURY TRIAL

I.      NATURE OF THE ACTION ................................................................................ 1

II.     EXECUTIVE SUMMARY .................................................................................. 3

        A.      PLMBS Defined.................................................................................... 3

        B.      The Bank Purchased Only the Highest Rated (Triple-A-Rated)
                PLMBS. ................................................................................................ 3

        C.      The Mortgage Originators Who Issued Loans Backing the
                Certificates Abandoned Underwriting Guidelines and Issued Loans
                Without Ensuring the Borrowers' Ability to Pay and Without
                Sufficient Collateral. ........................................................................... 4

        D.      The Defendants Provided Misleading Information About the
                Certificates in the Offering Documents They Prepared and
                Provided to the Bank............................................................................ 5

        E.      The Bank Is Entitled to Rescission and Damages. ............................... 8

III.    JURISDICTION AND VENUE .......................................................................... 9

IV.     THE PARTIES.................................................................................................. 10

        A.      Plaintiff ............................................................................................... 10

        B.      Defendants .......................................................................................... 11

                1.      The Banc of America Entities................................................. 11

                2.      The Barclays Entities ............................................................. 13

                3.      The Bear Stearns Entities....................................................... 14

                4.      The Chevy Chase (Capital One) Entities ............................... 17

                5.      The Citigroup Entities............................................................ 17

                6.      The Countrywide Entities ...................................................... 19

                7.      The Credit Suisse Entities...................................................... 21

                8.      The Deutsche Entities ............................................................ 22

9.  Goldman, Sachs & Co. .......................................................... 23

10. The Greenwich Entities .......................................................... 23

11. The Impac Entities ................................................................ 25

12. The J.P. Morgan Entities ....................................................... 25

13. The Lehman Individual Defendants ...................................... 27

14. The Merrill Lynch Entities .................................................... 29

15. The Morgan Stanley Entities ................................................ 31

16. The MortgageIT Entities ....................................................... 32

17. The Nomura Entities .............................................................. 33

18. The Residential Funding (GMAC) Entities ........................... 34

19. Sandler, O'Neill & Partners, L.P. ......................................... 35

20. The UBS Entities .................................................................. 35

21. WaMu Capital Corp. ............................................................. 36

22. The Wells Fargo Defendants ................................................. 36

23. The Securities Defendants ..................................................... 37

24. The Rating Agency Defendants ............................................. 37

C.  Successor Liability Allegations against Certain Defendants ............................. 38

1.  Successor Defendant Bank of America Corporation
    (Countrywide) .................................................................... 38

2.  Successor Defendant Bank of America Corporation
    (Merrill Lynch) .................................................................. 42

3.  Successor Defendant Capital One Financial Corporation
    and Capital One, National Association (Chevy Chase) ........... 43

4.  Successor Defendant DB Structured Products, Inc.
    (MortgageIT Holdings) ....................................................... 48

5.  Successor Defendant Merrill Lynch, Pierce, Fenner &
    Smith Incorporated (Banc of America Securities LLC). ......... 50

|  | 6. | Successor Defendant Morgan Stanley Mortgage Capital Holdings LLC (Morgan Stanley Mortgage Capital Inc.) | 51 |

| D. | The John Doe Defendants | 51 |
| E. | Summary Charts of Defendants and Certificates | 52 |

| V. | FACTUAL BACKGROUND | 52 |

| A. | The Creation of Mortgage-Backed Securities | 52 |
|  | 1. | The Securitization Process | 52 |
|  | 2. | Defendants' Access to Loan Files and Due Diligence Obligations | 55 |
|  | 3. | The Rating Process for PLMBS | 57 |

| B. | The Mortgage Originators Abandoned Underwriting and Appraisal Standards and Engaged in Predatory Lending | 59 |
|  | 1. | The Shift from "Originate to Hold" to "Originate to Distribute" Securitization Encouraged Mortgage Originators to Disregard Loan Quality | 59 |
|  | 2. | Mortgage Originators Abandoned Underwriting Guidelines to Create Loans for Securitization | 65 |
|  | 3. | Mortgage Originators Manipulated Appraisals of Collateralized Real Estate to Create Loans for Securitization | 67 |
|  | 4. | Mortgage Originators Engaged in Predatory Lending to Initiate Loans for Securitization | 72 |
|  | 5. | Widespread Defaults and Delinquencies Are the Inevitable Consequence of Loans Issued Without Meaningful Underwriting | 75 |
|  | 6. | The Bank's Review of Loan Files Recently Provided by Certain Trustees Confirms that Underwriting Guidelines Were Abandoned | 77 |

| C. | Federal and State Investigations, Press Reports, Publicly Available Documents Produced in Other Civil Lawsuits, and Analysis of the Loan Pools Underlying the Certificates Identify Systematic Violation of Underwriting Guidelines, Appraisal Guidelines, and |  |

Predatory Lending by the Originators Whose Loans Back the
PLMBS in this Case................................................................................... 78

1.      Countrywide Home Loans, Inc. .......................................................... 79

        a.      Government actions against Countrywide and
                documents produced therein demonstrate
                Countrywide's abandonment of sound underwriting
                practices. ...................................................................... 80

        b.      Private actions against Countrywide demonstrate
                Countrywide's abandonment of sound underwriting
                practices. ...................................................................... 91

        c.      Confidential witnesses provide further evidence of
                Countrywide's abandonment of sound underwriting
                practices. ...................................................................... 98

        d.      The mortgages originated by Countrywide and
                securitized in the PLMBS purchased by the Bank
                provide further evidence of Countrywide's
                abandonment of sound underwriting practices. ........................ 103

        e.      Press reports, government investigations, and
                related litigation demonstrate that Countrywide
                engaged in predatory lending.................................................. 103

        f.      Confidential witnesses provide further evidence of
                Countrywide's predatory lending practices. ............................ 106

2.      Bear Stearns Residential Mortgage Corporation and EMC
        Mortgage Corporation.......................................................................... 107

        a.      Private actions and confidential witnesses
                demonstrate the wholesale abandonment of sound
                underwriting practices by Bear Stearns Residential
                Mortgage Corporation and EMC Mortgage
                Corporation. ...................................................................... 107

        b.      The mortgages originated by Bear Stearns
                Residential Mortgage Corporation and EMC
                Mortgage Corporation and securitized in the
                PLMBS purchased by the Bank provide further
                evidence of these originators' abandonment of
                sound underwriting practices. ................................................ 112

3.      IndyMac Bank, F.S.B.......................................................................... 113

a.      Government actions and related lawsuits and
        investigations demonstrate IndyMac's abandonment
        of sound underwriting practices and its predatory
        lending....................................................................................... 114

b.      Private actions against IndyMac demonstrate
        IndyMac's abandonment of sound underwriting
        practices. ................................................................................... 118

c.      Confidential witnesses provide further evidence of
        IndyMac's abandonment of sound underwriting
        practices. ................................................................................... 121

d.      The mortgages originated by IndyMac and
        securitized in the PLMBS purchased by the Bank
        provide further evidence of IndyMac's
        abandonment of sound underwriting practices. ........................ 124

4.   Washington Mutual Mortgage Securities Corp. .................................... 125

a.      Government actions and related lawsuits and
        investigations demonstrate WaMu's abandonment
        of sound underwriting practices................................................ 125

b.      WaMu manipulated the appraisal process. ............................... 129

c.      WaMu engaged in predatory lending......................................... 137

d.      Confidential witnesses provide further evidence of
        WaMu's failures to adhere to sound underwriting
        practices, predatory lending, and manipulation of
        the appraisal process. ............................................................... 141

e.      The mortgages originated by WaMu and securitized
        in the PLMBS purchased by the Bank provide
        further evidence of WaMu's abandonment of sound
        underwriting practices............................................................... 149

5.   Wells Fargo Bank, N.A...................................................................... 150

a.      Investigations, lawsuits and confidential witness
        testimony demonstrate that Wells Fargo abandoned
        underwriting guidelines. ........................................................... 150

b.      The mortgages originated by Wells Fargo and
        securitized in the PLMBS purchased by the Bank
        provide further evidence of Wells Fargo's
        abandonment of sound underwriting practices. ........................ 157

c. Investigations, lawsuits and confidential witness testimony demonstrate that Wells Fargo engaged in predatory lending. ................................................................. 158

6. Ameriquest Mortgage Company ......................................................... 161

a. Investigations and lawsuits demonstrate that Ameriquest abandoned underwriting guidelines and engaged in predatory lending.................................. 162

b. The mortgages originated by Ameriquest and securitized in the PLMBS purchased by the Bank provide further evidence of Ameriquest's abandonment of sound underwriting guidelines. ...................... 165

7. Aurora Loan Services LLC and Lehman Brothers Bank, F.S.B. .............................................................................................. 166

a. Evidence produced in the Lehman Brothers bankruptcy case demonstrates that Aurora abandoned sound underwriting practices................................ 166

b. Confidential witnesses provide additional evidence of Aurora's abandonment of sound underwriting practices. ....................................................................... 170

c. The mortgages originated by Aurora and securitized in the PLMBS purchased by the Bank provide further evidence of Aurora's abandonment of sound underwriting guidelines. .......................................... 173

8. Chase Home Finance LLC and JPMorgan Chase Bank, N.A. ........................................................................................... 174

a. Investigations and confidential witness testimony demonstrate that the Chase Originators abandoned sound underwriting practices. ................................... 174

b. The mortgages originated by the Chase Originators and securitized in the PLMBS purchased by the Bank provide further evidence of abandonment of sound underwriting practices. ................................... 179

9. American Home Mortgage and American Home Mortgage Investment Corporation ....................................................... 180

a.     Investigations, lawsuits and confidential witness testimony demonstrate that AHM abandoned sound underwriting practices............................................... 180

b.     The mortgages originated by AHM and securitized in the PLMBS purchased by the Bank provide further evidence of AHM's abandonment of sound underwriting practices............................................. 183

10.    MortgageIT, Inc. ............................................................................. 184

a.     The Bank's review of loan files demonstrates that MortgageIT abandoned sound underwriting practices. ............................................................. 184

b.     The mortgages originated by MortgageIT and securitized in the PLMBS purchased by the Bank provide further evidence that MortgageIT abandoned sound underwriting practices................... 189

11.    Silver State ...................................................................................... 189

a.     Evidence from the Bank's review of loan files and a journalistic investigation indicates that Silver State abandoned sound underwriting practices.................................. 190

b.     The mortgages originated by Silver State and securitized in the PLMBS purchased by the Bank provide further evidence of Silver State's abandonment of sound underwriting practices. ........................ 192

12.    Alliance Bancorp ............................................................................ 193

13.    Morgan Stanley Mortgage Capital Inc.................................................. 196

a.     An investigation by the Massachusetts Attorney General provides evidence that Morgan Stanley & Co. abandoned sound underwriting practices. .......................... 197

b.     The mortgages originated by Morgan Stanley Mortgage and securitized in the PLMBS purchased by the Bank provide further evidence that Morgan Stanley Mortgage abandoned sound underwriting practices. ............................................................... 200

14.    Other Mortgage Originators Originating Loans Underlying the PLMBS Also Abandoned Sound Underwriting

Practices and Engaged in Predatory Lending in Order to
Issue Loans for Securitization ................................................. 201

D.   The Securitization Process Was Plagued by Conflicts of Interest
and Misplaced Incentives ........................................................ 202

1.   The Vertical Integration of Many of the Firms Involved in
the Issuance of the PLMBS Purchased by the Bank
Provided the Securities Defendants with Access to
Information Regarding the Abandonment of Underwriting
Guidelines, the Manipulation of the Appraisal Process, and
Predatory Lending Practices. ............................................ 202

2.   Financial Ties Between the Investment Banks and Non-
Bank Lenders Provided the Securities Defendants with
Access to Information Regarding the Mortgage
Originators' Failure to Adhere to Underwriting Guidelines
and Predatory Lending Practices. ..................................... 207

3.   Conflicts of Interest Undermined Adequate Due Diligence
and Disclosure to Investors. ............................................. 210

4.   The Sponsor Defendants Limited Third-Party Firms' Due
Diligence and Misused the Results of That Due Diligence. ............... 213

a.   The Sponsor Defendants directed the due diligence
process and were provided with detailed reports
describing the results of the process. ....................... 213

b.   The Sponsor Defendants both limited the due
diligence performed on the loan pools and misused
the results of the limited diligence that was
performed. .............................................................. 217

c.   The Sponsor Defendants should have known that
they included defective loans in the pools. ............... 219

5.   The Sponsor Defendants' Own Due Diligence Identified
Defective Loans in the Mortgage Pools Backing PLMBS. ............... 222

E.   The Vertical Integration of Many of the Firms Involved in the
Issuance of the PLMBS Purchased by the Bank Enabled the
Controlling Person Defendants to Control the Management and
Policies of the Controlled Entities ............................................ 224

F.   The Rating Agency Defendants Knew, and the Securities
Defendants Should Have Known, That the Securitization Process

Was Supported by Credit Ratings That Materially Misstated the
Credit Risk of the PLMBS. .......................................................................... 226

1.   The Rating Agency Defendants Knew That the Credit
     Ratings Were Unreliable, Based As They Were on
     Underwriting Standards That the Rating Agency
     Defendants Knew Had Been Abandoned. .......................................... 227

2.   The Credit Ratings Were Compromised by Conflicts of
     Interest, Manipulation and Misinformation. ...................................... 229

3.   The Credit Ratings Were Unreliable Due to the Use of
     Inaccurate, Outdated Models, and Inadequate Resources. ................. 231

4.   The Rating Agency Defendants Knew That Their PLMBS
     Ratings Fundamentally Differed from Their Ratings of
     Corporate Bonds. .............................................................................. 234

5.   Subsequent Downgrades Confirm that the Investment-
     Grade Ratings Reported in the Offering Documents Were
     Unjustifiably High and Misstated the True Credit Risk of
     the PLMBS Purchased by the Bank. .................................................. 235

6.   The Bank Reasonably Relied on the Credit Ratings
     Reported in the Prospectuses. ............................................................ 237

G.   The Proper Steps Were Not Taken To Ensure That the Mortgage
     Loans Underlying the Trusts Were Enforceable. ..................................... 239

VI.  DEFENDANTS' MATERIAL UNTRUE STATEMENTS AND
     OMISSIONS IN CONNECTION WITH THE SALE OF PLMBS TO
     THE BANK ...................................................................................................... 244

A.   The Securities Defendants Misrepresented Underwriting
     Guidelines Utilized by Mortgage Lenders ................................................ 245

1.   The Materiality of Underwriting Guidelines ....................................... 245

2.   Misstatements Regarding Underwriting Guidelines ............................. 245

3.   Evidence Demonstrating Misstatements in the Offering
     Documents Regarding the Originators' Underwriting
     Practices. .......................................................................................... 248

     a.   Government investigations, actions and settlements,
          confidential witnesses, and evidence developed in
          other private lawsuits demonstrate systematic and

pervasive abandonment of stated underwriting practices by the originators. ...................................................... 248

      b.    Analysis of loans that backed the PLMBS purchased by the Bank demonstrates the abandonment of stated underwriting practices by the originators. ............................................................. 249

B.    The Securities Defendants Misrepresented the Appraisal Process and LTVs That Were Based Upon Those "Appraisals." .................................. 259

    1.    The Materiality of Representations Regarding Appraisals and LTVs .............................................................................. 259

    2.    Misstatements Regarding Appraisals and LTVs................................... 263

        a.    The Offering Documents falsely state that the LTVs were based upon appraisals........................................ 263

        b.    Misstatements regarding the standards to which the purported "appraisals" conformed ........................................... 268

        c.    Misstatements regarding aggregate LTVs ................................ 270

    3.    Evidence Demonstrating Misstatements about Appraisals and LTVs in the Offering Documents .................................................... 270

        a.    Government investigations, press reports, and confidential witnesses demonstrate systemic and pervasive appraisal manipulation by the mortgage originators ............................................................... 270

        b..    Analysis of loans that backed the PLMBS purchased by the Bank demonstrate that appraisals were materially inflated and the LTVs were materially understated............................................................ 271

C.    The Offering Documents Were Materially Misleading Because They Failed to Inform Investors of the Presence of Compounded High-Risk Mortgages in the Loan Pools......................................................... 285

D.    Defendants' Statements Regarding the Triple-A Rating of the PLMBS Were False and Misleading................................................................. 290

    1.    The Materiality of the Credit Rating Process and Ratings .................... 290

2.    False Representations That the Certificates the Bank
      Purchased Would Not Be Issued Unless They Earned
      Triple-A Ratings ................................................................. 290

3.    Misstatements about the Credit Rating Process and Ratings............... 291

4.    Evidence Demonstrating Misstatements about the Ratings
      and Ratings Process .......................................................... 292

E.    The Securities Defendants Misrepresented the Mortgage
      Originators' Compliance with Predatory Lending Restrictions..................... 297

1.    The Materiality of Predatory Lending Practices and the
      Issuance of Loans that Violate Other State and Federal
      Lending Statutes................................................................. 297

2.    Misstatements about Predatory Lending Compliance ......................... 298

3.    Evidence Demonstrating Misstatements about Predatory
      Lending Practices of the Mortgage Originators.................................... 299

      a.    Government investigations, actions and settlements,
            confidential witnesses and evidence developed in
            other private lawsuits demonstrate predatory
            lending by the mortgage originators. ........................................ 299

      b.    Analysis of loans that backed the PLMBS
            purchased by the Bank demonstrate that loans in the
            mortgage pools were the result of predatory lending................ 300

F.    The Securities Defendants Misrepresented the Due Diligence
      Performed on the Mortgage Pools that Backed the PLMBS
      Purchased by the Bank.......................................................... 300

1.    The Materiality of Due Diligence on the Mortgage Pools.................... 300

2.    Misstatements about Due Diligence .................................... 301

3.    Evidence of Misstatements about Due Diligence ................................. 303

G.    The Securities Defendants Misrepresented That Mortgages and
      Mortgage Loans Were Validly Assigned and Transferred to the
      Issuing Trusts............................................................... 303

1.    The Materiality of Valid Assignment and Transfer.............................. 303

2.    Misstatements Regarding Valid Assignment and Transfer ................. 304

3.     A Material Number of Mortgages and Mortgage Loans Were Not Validly Transferred or Assigned to the Issuing Trusts..................................................................................................306

VII.    COUNTS..................................................................................................................306

FIRST CAUSE OF ACTION ..................................................................................306

Primary Violations of the Massachusetts Uniform Securities Act ..............................306

SECOND CAUSE OF ACTION ...............................................................................316

Joint and Several Liability under the Massachusetts Uniform Securities Act...............................................................................................................316

THIRD CAUSE OF ACTION ..................................................................................327

Negligent Misrepresentation by Certain Securities Defendants....................................327

FOURTH CAUSE OF ACTION ...............................................................................337

Violations of the Massachusetts General Law c. 93A by Certain Securities Defendants .....................................................................................337

FIFTH CAUSE OF ACTION ...................................................................................347

Fraud by Rating Agency Defendants..........................................................................347

SIXTH CAUSE OF ACTION ...................................................................................351

Violations of Massachusetts General Law c. 93A by the Rating Agency Defendants .....................................................................................351

SEVENTH CAUSE OF ACTION ..............................................................................353

Negligent Misrepresentation by Moody's and S&P ....................................................353

VIII.   PRAYER FOR RELIEF ...........................................................................................355

IX.     DEMAND FOR JURY TRIAL ................................................................................356

GLOSSARY ...........................................................................................................357

# APPENDICES

PLMBS CERTIFICATES PURCHASED BY FEDERAL HOME LOAN BANK
OF BOSTON ..........................................................................................................APPX. I

CLAYTON TESTIMONY AND SUPPORTING DOCUMENTS REGARDING DUE
DILIGENCE REVIEWS
    A.    CLAYTON SERVICES, INC. REPORT ON DUE DILIGENCE REJECTION
        AND WAIVER TRENDS
    B.    TESTIMONY OF VICKI BEAL, SENIOR VICE PRESIDENT, CLAYTON
        HOLDINGS, BEFORE THE FINANCIAL CRISIS INQUIRY COMMISSION,
        SEPTEMBER 23, 2010
    C.    TESTIMONY OF KEITH JOHNSON, FORMER PRESIDENT,
        CLAYTON HOLDINGS, BEFORE THE FINANCIAL CRISIS
        INQUIRY COMMISSION, SEPTEMBER 23, 2010 .............................. APPX. II

DEFENDANTS' MATERIALLY MISLEADING STATEMENTS AND
OMISSIONS REGARDING UNDERWRITING GUIDELINES..................... APPX. III

DEFENDANTS' MATERIALLY MISLEADING STATEMENTS AND
OMISSIONS REGARDING THE CREDIT RATING PROCESS AND
THE AAA RATING OF THE PLMBS ............................................................APPX. IV

DEFENDANTS' MATERIALLY MISLEADING STATEMENTS AND
OMISSIONS REGARDING THE MORTGAGE ORIGINATORS'
COMPLIANCE WITH PREDATORY LENDING RESTRICTIONS .............. APPX. V

DEFENDANTS' MATERIALLY MISLEADING STATEMENTS AND
OMISSIONS REGARDING DUE DILIGENCE CONDUCTED BY THE
SPONSORS AND ORIGINATORS ................................................................APPX. VI

LOAN-TO-VALUE RATIO DEFINITIONS.............................................. APPX. VII

ANALYSIS OF ADDITIONAL LOAN FILES ORIGINATED BY ALLIANCE
BANCORP...........................................................................................APPX. VIII

ADDITIONAL ORIGINATORS...................................................................APPX. IX

DEFENDANTS WHO ARE OR WERE REGISTERED TO CONDUCT
BUSINESS IN MASSACHUSETTS ............................................................. APPX. X

SPONSOR DEFENDANTS .........................................................................APPX. XI

DEPOSITOR/ISSUER DEFENDANTS ...................................................... APPX. XII

UNDERWRITER AND / OR CORPORATE SELLER DEFENDANTS ................. APPX. XIII

CORPORATE CONTROLLING PERSON DEFENDANTS ..................................... APPX. XIV

SUCCESSOR DEFENDANTS ................................................................. APPX. XV

LEHMAN INDIVIDUAL DEFENDANTS ............................................... APPX. XVI

CREDIT RATING AGENCY DEFENDANTS ...................................... APPX. XVII

Plaintiff, FEDERAL HOME LOAN BANK OF BOSTON (hereinafter the "Bank")

alleges the following based upon personal knowledge with regard to its own acts, and upon

public information as well as information and belief as to all other matters. The Bank's

information and belief is based on, among other things, the investigation by its counsel.  The

investigation included but was not limited to: (1) review and analysis of the Offering Documents

for the securities that are the subject of this action; (2) interviews with individuals with first-hand

knowledge of the events alleged herein; (3) examination of relevant filings with the Securities

and Exchange Commission ("SEC"), press releases and other public statements; (4) review and

analysis of pleadings in other private civil actions involving certain Defendants; (5) review and

analysis of investigations  and complaints filed by state and federal authorities against certain

Defendants; (6) published materials, media reports, congressional testimony and additional

related materials; (7) analysis of the performance and composition of the loan pools underlying

the securities; and (8) review of origination files for loans underlying certain of the securities to

which the Bank recently has been provided access.  Many of the facts related to Plaintiff's

allegations are known only by the Defendants, or are exclusively within their custody or control,

including, for example, the loan origination files to which the Bank has not been provided

access.  Plaintiff believes that substantial additional evidentiary support for the allegations set

forth below will be developed after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.       The action arises from the sale by certain Defendants to the Bank of over $5.9

billion in Private Label Mortgage-Backed Securities ("PLMBS" or "Certificates").  The

Certificates are "securities" within the meaning of the Massachusetts Uniform Securities Act,

M.G.L. c. 110A, § 401(k).  The Defendants include the Sponsors, Depositors/Issuers, and

Underwriters who packaged, marketed, offered, and sold the Certificates to the Bank ("Securities Defendants").

2.       The Certificates were sold to the Bank by means of registration statements, prospectuses, supplemental prospectuses, private placement memoranda and other written offering materials (collectively, the "Offering Documents") that the Securities Defendants wrote, signed, and/or circulated, and which contained untrue statements of material facts and omitted to state material facts necessary in order to make the Offering Documents not misleading.[1]

3.       Accordingly, the Bank seeks rescission and damages under M.G.L. c. 110A, § 101 *et seq.* (the Massachusetts Uniform Securities Act), M.G.L. c. 93A, § 1 *et seq.*, and applicable common law.

4.       The Bank purchased the PLMBS in reliance on the ratings assigned to them by Fitch Inc.; The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC; and Moody's Investors Service, Inc. and Moody's Corporation ("Rating Agency Defendants"). The Rating Agency Defendants issued these ratings knowing that the ratings were unreliable and lacked a sufficient basis in fact, and they issued the ratings without due care.  The Bank seeks appropriate relief against the Rating Agency Defendants under M.G.L. c. 93A, § 1 *et seq.* and applicable common law.

---

[1] Attached as Appendix I is a list of the PLMBS purchased by the Bank that are the subject of this action.  One of the certificates, MARM 2007-R5, is not directly backed by a mortgage pool, but rather constitutes an investment in a separate PLMBS, BALTA 05-09-2B, and is therefore backed indirectly by the pool of mortgages that back BALTA 05-09-2B.

## II.   EXECUTIVE SUMMARY

### A.   PLMBS Defined.

5.      PLMBS are mortgage pass-through Certificate securities entitling the holder to income payments from pools of mortgage loans.[2]  The securities are referred to as "private label" because they are issued by private entities instead of the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac"), which are U.S. government-sponsored enterprises ("GSEs"). (Mortgage securities issued or guaranteed by Fannie Mae and Freddie Mac are referred to as "agency" mortgage securities.)

6.      The value of a mortgage pass-through Certificate depends on the ability of borrowers to repay the principal and interest on the underlying loans and the adequacy of the collateral the borrowers provide.   In the event that borrowers fall behind or default, the investor is exposed to loss.  For this reason, statements regarding the nature and extent of the underwriting guidelines utilized by the mortgage originators who issued the loans backing the PLMBS and the collateral for the loans are critically important to investors such as the Bank.  If stated underwriting criteria are not followed, the collateral is not properly appraised, or the creditworthiness of the borrower is not accurately measured, the Certificates are riskier and more likely to result in losses than is apparent from the Offering Documents.

### B.   The Bank Purchased Only the Highest Rated (Triple-A-Rated) PLMBS.

7.      PLMBS are segmented into "tranches" with laddered payment priority and varying return potential for the holders of certificates representing various tranches.  The most senior tranches enjoy the highest payment priority and lowest risk of default. Thus, if mortgage payments are not made, the losses are allocated first to the most junior tranches and move toward

---

[2]  The terms "PLMBS" and "Certificate(s)" are used interchangeably.  The Bank identifies the PLMBS using the ticker symbols for each certificate as created by Bloomberg.

the more senior tranches as losses cause the junior tranches to be exhausted. The senior tranches often are protected as well by certain credit enhancements, a common form of which is known as "overcollateralization." When a tranche is overcollateralized, the mortgages in that tranche have an aggregate principal balance that exceeds the aggregate principal balances of the Certificates secured thereby. For these reasons, the tranches are given different credit ratings—the higher up the ladder, the higher the rating.

8. Pursuant to both Bank policy and applicable regulatory requirements, and in order to minimize the risk of loss on the PLMBS, the Bank purchased only senior, triple-A-rated PLMBS tranches. Thus, based on the Offering Documents, the Bank believed it was buying safe and secure Certificates with an extremely low risk of default—equivalent, from an investment quality standpoint, to other triple-A-rated investments. Instead, the Bank purchased a toxic stew of PLMBS backed by doomed mortgage loans.

**C.  The Mortgage Originators Who Issued Loans Backing the Certificates Abandoned Underwriting Guidelines and Issued Loans Without Ensuring the Borrowers' Ability to Pay and Without Sufficient Collateral.**

9. The Bank did not know when it purchased the Certificates that the mortgage originators who made the loans backing the PLMBS, many of whom were affiliates of the Securities Defendants, sought to issue as many loans as possible to feed these Defendants' securitization machine. Whether borrowers could repay the loans and the quality of the collateral became secondary considerations to the originators' ability to sell the pooled interests on the loans. The mortgage loan originators' standard operating procedure was to approve any loan that could be sold into the secondary mortgage market. As a result, unbeknownst to the Bank, exceptions to underwriting and appraisal standards became the norm. Likewise, the originators knowingly obtained flawed appraisals of the collateral for the loans. Rather than requiring appraisals conducted in accordance with governing federal appraisal regulations, the

mortgage originators pressured and coerced appraisers to ensure that the appraisals came back "at value," *i.e.*, the level necessary to close the loan. Consequently, the collateral for the loan pools backing the Certificates purchased by the Bank was vastly deficient.

10.     The Bank also did not know that the Securities Defendants failed to ensure that the loans they purchased and packaged into the Certificates complied with the mortgage originators' stated underwriting guidelines and appraisal standards. As revealed in recent government investigations, this approach to securitization was labeled "IBGYBG"—"I'll be gone, you'll be gone." Lost in this process was any effort by the Securities Defendants to truthfully and accurately describe the loans in the Offering Documents so that investors such as the Bank could ascertain the true risk of the Certificates. Making matters even more egregious, the Securities Defendants conducted a certain amount of due diligence on the loans, and were in a position to know that no real underwriting had been done.

**D.     The Defendants Provided Misleading Information About the Certificates in the Offering Documents They Prepared and Provided to the Bank.**

11.     In many arm's-length transactions, a buyer and a seller have limited disclosure obligations—buyer beware, or *caveat emptor*, is acceptable. This, however, is not the case with the sale of securities. Those who participate in the sale of securities are required to provide detailed information regarding what is being sold. Here, as required by law, the Defendants prepared detailed Offering Documents in which they purported to describe among other things the characteristics of the loans backing the Certificates. However, unbeknownst to the Bank, and to its great detriment, the Offering Documents contained material misstatements and omitted to disclose material information with respect to the mortgage pools backing the Certificates, and what Defendants knew about the pools. As a result, despite their original triple-A ratings and the

5

abundant representations and warranties regarding the underlying mortgage pools, the Certificates were far riskier than could be determined from the Offering Documents.

12.     Though the Certificates themselves are complex, the abuses by the Defendants can be put in simple terms.  The Offering Documents did not provide truthful or accurate information about the underwriting and appraisal standards used when the loans backing the pools were issued, or about the due diligence conducted when the loans were securitized.

13.     Defendants' untrue statements and omissions of material fact went to the heart of the risk of the mortgage pools underlying the PLMBS.  Specifically, Defendants failed to accurately describe key characteristics of the mortgages and the securitization of the mortgages, including, but not limited to:

    a.     **The Mortgage Originators' Underwriting Guidelines.**  The Offering Documents contained material misstatements and omitted material information regarding the mortgage originators' abandonment of underwriting guidelines.  The Defendants represented that the mortgage originators applied their stated underwriting guidelines when issuing loans to borrowers.  However, the mortgage originators routinely disregarded their own guidelines and granted exceptions without proper justification.

    b.     **The Loan-to-Value Ratios of the Mortgage Loans and the Appraisal Standards Used to Determine the Ratios.**  The Offering Documents contained material misstatements and omitted material information regarding the loan-to-value ratios ("LTVs") of the loans in the mortgage pools and the appraisal standards that were purportedly applied to determine the home values.  The LTVs were purportedly based on valid appraisals performed in accordance with specific regulations and standards—but in truth, they were not based on legitimate appraisals at all.  They were predetermined values set to ensure that the loan would close.

    c.     **The Ratings Process.**  The Offering Documents contained material misstatements and omitted material information regarding the basis for the Certificates' triple-A ratings and the ratings processes.  The Offering Documents represented that the Rating Agency Defendants conducted analysis that was designed to assess the likelihood of delinquency and defaults in the underlying mortgage pools.  However, the Rating Agency Defendants knew, and the Securities Defendants should have known, that the ratings were based on unreliable data and faulty assumptions—all of which caused the ratings to vastly understate the true risk of the PLMBS and overstate their creditworthiness.

**d.** **Predatory Lending.** The Offering Documents contained material misstatements and omitted material information regarding the mortgage originators' compliance with state and federal predatory lending prohibitions. Pursuant to the Bank's regulatory requirements, it was not permitted to purchase any mortgage-backed securities that were secured by mortgage loans that violated these prohibitions. The Defendants represented that the mortgage pools did not contain any mortgage loans that violated state and federal predatory lending prohibitions. However, in truth, the mortgage originators engaged in rampant predatory lending, and, thus, the mortgage pools contained many loans that violated state and federal predatory lending restrictions.

**e.** **Due Diligence.** Many of the Offering Documents contained material misstatements and omitted material information regarding the Sponsors' due diligence on the mortgage loans in the PLMBS mortgage pools. The Offering Documents stated that the underlying mortgage loans were inspected for compliance with the mortgage originators' underwriting and appraisal guidelines and documentation requirements. However, the Offering Documents omitted that the third-party due diligence firms retained to conduct the due diligence felt pressured to ignore deviations from the applicable underwriting criteria, and that even with regard to loan defects identified through the due diligence process, the Sponsors nonetheless waived the defects as to a substantial percentage of these loans and, in many cases, used this information about defective loans to negotiate lower prices for the loan pools. These lower prices were not reflected in the PLMBS prices paid by investors.

**f.** **Enforceability of Mortgages.** Many of the Offering Documents contained material misstatements regarding the measures taken to ensure the enforceability of the mortgages and mortgage loans transferred to the trusts. In order for a mortgage to be enforced, basic steps need to be taken to validly assign the mortgage and mortgage loan to the trust and ensure that the trustee has the proper papers. These basic steps, and the representations made about these steps, were critical to investors (including the Bank), because if a mortgage cannot be enforced, then the mortgage loans, and the Certificates dependent on these loans, are worthless. The Offering Documents failed to disclose that in fact basic steps regarding the transfer of mortgages and mortgage loans were not followed—mortgage loans were not validly assigned, and papers necessary to ensure enforceability of the mortgage were never transferred to the trustee.

**g.** **The Offering Documents Did Not Disclose the Compounded High-Risk Mortgages that Infected the Mortgage Pools.** The Offering Documents contained certain statistical measurements of the overall mortgage pools, including measurements of the pools' weighted average LTVs, credit scores, and debt-to-income ratios ("DTIs"). In addition to the material inaccuracy of much of this data, the Offering Documents did not disclose the compounding of risks in many mortgages in the pools. The representations in the Offering Documents indicated that a high risk according to one measure (say, a bad credit score) would be offset by a low risk according to another measure (say, a good LTV). If the Offering Documents were accurate, then, the mortgage pools would contain few if any mortgages with *compounded* high risks—with, for example, a bad credit score *and* a bad LTV. But analysis of the loans in the mortgage pools shows otherwise. Many of the mortgage loans in the pools in fact contained

7

multiple risky factors. The undisclosed presence of a significant volume of loans with these characteristics made the Certificates much more prone to default than the Offering Documents indicated. The prevalence of these compounded high-risk loans tainted the loan pools and contributed substantially to the decline in performance and value of the Certificates.

14.    The untrue, incomplete and materially misleading statements summarized above and discussed in detail below were made with respect to each of the Certificates purchased by the Bank. The Bank reasonably relied on these statements and was misled by the omissions when deciding to purchase the Certificates.

15.    As a result of these untrue statements in and omissions from the Offering Documents, the Bank purchased Certificates that were far riskier than represented by the Defendants, and that were not in truth "highest investment grade" as stated in the Offering Documents, but, instead, were low-quality, high-risk Certificates. All but two of the 115 Certificates have been downgraded to below investment-grade, *i.e.*, "junk," indicating a high probability of default.

**E.    The Bank Is Entitled to Rescission and Damages.**

16.    As indicated above, and described in detail below, it is not happenstance, or the result of later events, that the PLMBS failed to perform, plunged in value, and were ultimately severely downgraded. To the contrary, the PLMBS purchased by the Bank collapsed because the underlying loans were not what the Offering Documents represented them to be at the time the Certificates were issued. They were *not* backed by pools of loans issued to borrowers based on the application of stated underwriting standards. Exceptions to underwriting guidelines were *not* justified by "compensating circumstances." Valid appraisals of the collateral for the loans were *not* performed. The Securities Defendants did *not* engage in appropriate and effective due diligence to ensure that the loans satisfied the originators' stated underwriting guidelines.

17.     Because the Offering Documents were marred by material misstatements and omissions that concealed the true risk of the Certificates, the Bank is entitled to rescission and such other make-whole relief afforded by applicable law.

18.     The fair value of these Certificates has also declined dramatically.  Moreover, as a result of the current and anticipated future poor performance of the mortgages underlying these Certificates, the Bank has incurred other-than-temporary impairment losses on these investments, resulting in hundreds of millions of dollars in losses.

19.     Accordingly, the Bank seeks relief from Defendants in the manner set forth herein.

### III.    JURISDICTION AND VENUE

20.     This Court has jurisdiction over the claims alleged in this action.

21.     This is an action for rescission and damages in an amount exceeding $25,000.

22.     Massachusetts law applies to Plaintiff's state law claims that arise under the Massachusetts Uniform Securities Act and under the common law of Massachusetts, because the Bank's claims arise from its transaction of business with Defendants in Massachusetts.

23.     The Defendants are subject to personal jurisdiction in Massachusetts pursuant to M.G.L. c. 223A, § 3, because the Bank's claims against Defendants arise from Defendants' transaction of business within Massachusetts.

24.     As set forth in Appendix X attached to this Complaint, numerous Defendants are or were at the relevant time registered to do business in Massachusetts and have thereby submitted to the jurisdiction of this Commonwealth.

25.     Because its activities are not localized in one state, the Bank is not a citizen of any state under 28 U.S.C. § 1332(c).

26.     Venue is proper in this County pursuant to M.G.L. c. 223, § 8(2), (4).

27.     The Bank asserts no claims in this action against any entity that has filed for bankruptcy protection.

## IV.   THE PARTIES

### A.     Plaintiff

28.     The Bank was created by the Federal Home Loan Bank Act of 1932.  The Bank is a cooperative bank created to promote housing finance opportunities for Americans of all income levels.  For more than 75 years, the Bank has pursued that public policy mission by loaning money at competitive rates to member financial institutions, which helps those members make home loans available to prospective home buyers.

29.     The headquarters of the Bank are in Boston, Suffolk County, Massachusetts. Under its Organization Certificate, the Bank is to operate in Federal Home Loan Bank District 1, which comprises the states of Connecticut, Massachusetts, Maine, New Hampshire, Rhode Island, and Vermont.  The Bank conducts business in each of these six states, and its member institutions are headquartered in and conduct business in each of them.  From time to time, the Bank also conducts business with the other eleven Federal Home Loan Banks.

30.     The Bank's operations are principally funded by its earnings and funds raised by issuing debt instruments (bonds and notes) in the capital markets through the Office of Finance, a joint Federal Home Loan Bank office in Virginia.

31.     The Bank is capitalized solely by the capital-stock investments of its members and by its retained earnings.

32.     The Bank's members are all private institutions eligible for membership, including banks, savings banks, savings and loan associations, cooperative banks, credit unions, and insurance companies.

33.     The Bank is not a federal agency, and the Bank is not a citizen of any state.  The Bank is federally chartered, but privately capitalized and independently managed.  The federal government is not involved in the day-to-day management of the Bank's operations. Management of the Bank is vested by law in the Bank's board of directors, all members of which are either elected by the Bank's shareholder members or, in the case of a vacancy, appointed by the board of directors.  No tax dollars are involved in the operation of the Bank, and the federal government does not own any of the Bank's stock.

34.     The Bank is supervised and examined by the Federal Housing Finance Agency, the successor to the Federal Housing Finance Board.

35.     The members of the Bank's board of directors reside in Connecticut, Massachusetts, Maine, New Hampshire, Rhode Island, and Vermont.

36.     In light of its public policy mission, the Bank has a very conservative investment philosophy.  The Bank bought the PLMBS on the basis of factual representations designed to convince the Bank that these securities were safe, prudent, and highly rated investments.  The Bank could not and would not have purchased the PLMBS if the Offering Documents had disclosed the truth about these securities and the mortgage loans that backed them.

**B.     Defendants**

      **1.     The Banc of America Entities**

37.     Depositor/Issuer Defendant Banc of America Funding Corporation is a Delaware corporation.  Banc of America Funding Corporation was the Depositor for Certificates BAFC 2006-D 1A1 and BAFC 2005-H 7A1.

38.     Underwriter and Corporate Seller[3] Non-Defendant Banc of America Securities LLC was a Delaware limited liability company that, during the relevant period, maintained a

---

[3] See footnote 4 below for a definition of the term "Corporate Seller."

securities broker-dealer Financial Institutions Regulatory Authority ("FINRA") registration in Massachusetts and was registered to do business in Massachusetts. Banc of America Securities LLC underwrote Certificates NAA 2007-3 A1, BAFC 2006-D 1A1 and BAFC 2005-H 7A1. Banc of America Securities LLC also sold Certificate WFMBS 2006 AR12 1A1 to the Bank. Effective November 1, 2010, Banc of America Securities LLC merged with and into Successor Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated, a Delaware corporation. *See infra* § III.C. All references herein to Banc of America Securities LLC are also to Merrill Lynch, Pierce, Fenner & Smith Incorporated, which is liable as a matter of law as successor to Banc of America Securities LLC by virtue of its status as the surviving entity in its merger with Banc of America Securities LLC.

39.     Sponsor Defendant Bank of America, National Association is a nationally chartered bank that operates branches throughout Massachusetts and is regulated by the Office of the Comptroller of the Currency (OCC). Bank of America, National Association was the Sponsor of the offerings in which the bank purchased Certificates BAFC 2005-H 7A1 and BAFC 2006-D 1A1. Bank of America, National Association was also an originator of loans for the offering in·which the bank purchased Certificate BAFC 2006-D 1A1.

40.     Controlling Person Defendant Bank of America Corporation is a Delaware corporation. Bank of America Corporation is the parent and a controlling entity of Banc of America Funding Corporation, Banc of America Securities LLC and Bank of America, National Association.

41.     Bank of America Corporation is also named as a Successor Defendant to CWALT, Inc., CWMBS, Inc., Countrywide Securities Corporation, Countrywide Home Loans, Inc. and Countrywide Financial Corporation. *See infra* § IV.C. As set forth below, on or about

July 1, 2008, Successor Defendant Bank of America Corporation acquired Countrywide

Financial Corporation and all of its subsidiaries, including CWALT, Inc., CWMBS, Inc.,

Countrywide Securities Corporation, and Countrywide Home Loans, Inc.

42.     Bank of America Corporation is also named as a Successor Defendant to Merrill

Lynch Mortgage Investors, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill

Lynch Mortgage Lending, Inc., and Merrill Lynch & Co., Inc. *See infra* § IV.C. As set forth

below, on or about January 1, 2009, Successor Defendant Bank of America Corporation acquired

Merrill Lynch & Co., Inc. and all of its subsidiaries, including Merrill Lynch Mortgage

Investors, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Merrill Lynch

Mortgage Lending, Inc.

**2.     The Barclays Entities**

43.     Depositor/Issuer Defendant BCAP LLC is a Delaware corporation.  BCAP LLC

was the Depositor for Certificate BCAP 2006-AA1 A1.

44.     Underwriter Defendant Barclays Capital Inc. is a Connecticut corporation which,

at all relevant times, has maintained a securities broker-dealer FINRA registration in

Massachusetts and was and is registered to do business in Massachusetts.  Barclays Capital Inc.

underwrote Certificates RALI 2007-QS6 A29, CCMFC 2006-2A A1, CCMFC 2007-1A A1,

CCMFC 2007-2A A1, LUM 2006-7 2A1, LUM 2006-6 A1, and BCAP 2006-AA1 A1.

**3.     The Bear Stearns Entities**

45.     Depositor/Issuer Defendant Bear Stearns Asset Backed Securities I LLC is a

Delaware limited liability company.  Bear Stearns Asset Backed Securities I LLC was the

Depositor for Certificate BALTA 2006-1 11A1.

46.     Depositor/Issuer Defendant Structured Asset Mortgage Investments II Inc. is a

Delaware corporation.  Structured Asset Mortgage Investments II Inc. was the Depositor for

Certificates BSMF 2007-AR5 1A1A, BALTA 2007-3 1A1, BSMF 2007-AR4 1A1, BALTA

2007-2 1A1, BALTA 2007-1 1A1, BSMF 2007-AR1 1A1, BSMF 2006-AR5 1A1, BALTA

2006-7 1A1, BSMF 2006-AR3 1A1, BSMF 2006-AR2 1A1, BALTA 2006-6 1A1, SAMI 2006-

AR7 A1A, BSMF 2006-AR1 1A1, BALTA 2006-5 1A1, SAMI 2006-AR4 4A1, SAMI 2006-

AR6 1A1, BALTA 2006-4 11A1, BALTA 2006-4 13A1, LUM 2006-3 11A1, BALTA 2006-3

1A1, BALTA 2006-2 11A1, BALTA 2005-10 11A1, LUM 2005-1 A1, BALTA 2005-9 11A1,

BALTA 2005-8 11A1, SAMI 2005-AR6 2A1, GPMF 2005-AR4 4A1A, SAMI 2005-AR3 1A1,

GPMF 2005-AR2 A1, SAMI 2005-AR2 1A1, GPMF 2005-AR1 A2, and GPMF 2006-AR3 4A1.

    47.    Underwriter and Corporate Seller[4] Defendant Bear, Stearns & Co. Inc., now

known as J.P. Morgan Securities, LLC (hereafter "Bear, Stearns & Co. Inc."),[5] is a Delaware

corporation which, at all relevant times, has maintained a securities broker-dealer FINRA

registration in Massachusetts and was and is registered to do business in Massachusetts.  Bear,

Stearns & Co. Inc. maintains its Massachusetts principal office at One Federal Street, Boston,

MA 02110.  Bear, Stearns & Co. Inc. underwrote Certificates AHM 2005-2 1A1, MHL 2005-5

A1, LUM 2005-1 A1, NAA 2007-3 A1, NAA 2007-1 2A1, LUM 2006-7 2A1, IMM 2005-7 A1,

---

[4] As used in this Complaint, "Corporate Seller" refers to a corporate entity that sold a particular
issuance of PLMBS directly to that Bank, but did not act as an Underwriter for that PLMBS.
For example, Bear, Stearns & Co. Inc. acted as a Corporate Seller—but not as an
Underwriter—with respect to Certificate NAA2006-AR4A2.

[5] During the fall of 2008, Underwriter Defendant J.P. Morgan Securities Inc. merged with and
into Underwriter Defendant Bear Stearns & Co., Inc.  The surviving corporation changed its
name from Bear Stearns & Co. Inc. to J.P. Morgan Securities Inc.  The company changed its
name again on or about September 1, 2010, when it converted into J.P. Morgan Securities LLC.
For the sake of clarity, Plaintiff refers to this Underwriter Defendant as Bear Stearns & Co.,
Inc. in connection with all pre-merger acts and omissions of Bear Stearns & Co., Inc.
Similarly, Plaintiff refers to this Underwriter Defendant as J.P. Morgan Securities Inc. in
connection with all pre-merger acts and omissions of J.P. Morgan Securities Inc. To the extent
that Underwriter Defendant J.P. Morgan Securities Inc. has undergone a change in corporate
structure and/or ownership through merger, J.P. Morgan Securities LLC remains liable as the
initial entity's successor.

LUM 2006-6 A1, BSMF 2007-AR5 1A1A, BALTA 2007-3 1A1, BSMF 2007-AR4 1A1, TMST 2007-1 A2A, BALTA 2007-2 1A1, BALTA 2007-1 1A1, BSMF 2007-AR1 1A1, BSMF 2006-AR5 1A1, BALTA 2006-7 1A1, BSMF 2006-AR3 1A1, BSMF 2006-AR2 1A1, BALTA 2006-6 1A1, SAMI 2006-AR7 A1A, BSMF 2006-AR1 1A1, BALTA 2006-5 1A1, SAMI 2006-AR4 4A1, SAMI 2006-AR6 1A1, IMSA 2006-2 1A2A, BALTA 2006-4 11A1, BALTA 2006-4 13A1, LUM 2006-3 11A1, BALTA 2006-3 1A1, BALTA 2006-2 11A1, BALTA 2006-1 11A1, BALTA 2005-10 11A1, IMSA 2005-2 A1, BALTA 2005-9 11A1, BALTA 2005-8 11A1, SAMI 2005-AR6 2A1, GPMF 2005-AR4 4A1A, SAMI 2005-AR3 1A1, GPMF 2005-AR2 A1, SAMI 2005-AR2 1A1, GPMF 2005-AR1 A2, and CWHL 2005-2 2A1.  Bear, Stearns & Co. Inc. also sold Certificate NAA2006-AR4A2 to the Bank.

48.     Sponsor Defendant EMC Mortgage Corporation is a Delaware corporation that was and is registered to do business in Massachusetts.  EMC Mortgage Corporation was the Sponsor for the offerings in which the Bank purchased Certificates SAMI 2006-AR6 1A1, SAMI 2005-AR6 2A1, SAMI 2005-AR3 1A1, SAMI 2005-AR2 1A1, GPMF 2005-AR4 4A1A, BSMF 2007-AR5 1A1A, BALTA 2007-3 1A1, BSMF 2007-AR4 1A1, BALTA 2007-2 1A1, BALTA 2007-1 1A1, BSMF 2007-AR1 1A1, BSMF 2006-AR5 1A1, BALTA 2006-7 1A1, BSMF 2006-AR3 1A1, BSMF 2006-AR2 1A1, BALTA 2006-6 1A1, SAMI 2006-AR7 A1A, BSMF 2006-AR1 1A1, BALTA 2006-5 1A1, SAMI 2006-AR4 4A1, BALTA 2006-4 11A1, BALTA 2006-4 13A1, BALTA 2006-3 1A1, BALTA 2006-2 11A1, BALTA 2006-1 11A1, BALTA 2005-10 11A1, BALTA 2005-9 11A1, BALTA 2005-8 11A1, GPMF 2005-AR2 A1, GPMF 2005-AR1 A2, and GPMF 2006-AR34A1.

49.     Controlling Person Defendant The Bear Stearns Companies Inc. is a Delaware corporation.  At the time the Bank acquired the relevant Certificates, The Bear Stearns

Companies Inc. was the parent company and a controlling entity of Bear Stearns Asset Backed Securities I LLC, Structured Asset Mortgage Investments II Inc., Bear, Stearns & Co. Inc., and EMC Mortgage Corporation.  At the time of the transactions, The Bear Stearns Companies, Inc. was also the parent company and a controlling entity of Bear Stearns Residential Mortgage Corporation which originated loans for the offerings in which the Bank purchased Certificates BALTA 2007-3 1A1, BALTA 2007-2 1A1, BSMF 2006-AR1 1A1, BSMF 2007-AR4 1A1, BSMF 2007-AR5 1A1A, BSMF 2007-AR1 1A1, BSMF 2006-AR3 1A1, BSMF 2006-AR2 1A1, and BSMF 2006-AR5 1A1.  The Bear Stearns Companies, Inc. was also the parent company and a controlling entity of EMC Mortgage Corporation, which originated loans for the offerings in which the bank purchased Certificates BALTA 2007-3 1A1, BALTA 2007-2 1A1, BALTA 2007-1 1A1, BALTA 2006-7 1A1, BALTA 2006-5 1A1, BALTA 2006-3 1A1, BALTA 2006-2 11A1, BALTA 2006-1 11A1, BALTA 2006-4 13A1, BALTA 2006-4 11A1, BALTA 2005-9 11A1, BALTA 2006-6 1A1, BALTA 2005-10 11A1, BSMF 2006-AR5 1A1, BSMF 2006-AR2 1A1, BSMF 2006-AR3 1A1, BSMF 2007-AR1 1A1, LUM 2005-1 A1, BALTA 2005-8 11A1, BSMF 2006-AR1 1A1, BSMF 2007-AR4 1A1 and BSMF 2007-AR5 1A1A.  On or about July 6, 2008, The Bear Stearns Companies, Inc. legally changed its name to The Bear Stearns Companies LLC.  All references herein to The Bear Stearns Companies, Inc. are also to The Bear Stearns Companies LLC.

### 4.      The Chevy Chase (Capital One) Entities

50.      Depositor/Issuer Defendant Chevy Chase Funding LLC is a Delaware limited liability company.  Chevy Chase Funding LLC was the Depositor for Certificates CCMFC 2006-2A A1, CCMFC 2007-1A A1, and CCMFC 2007-2A A1.

51.      Sponsor and Controlling Person Non-Defendant Chevy Chase Bank, F.S.B. was a federally chartered savings bank that was registered to do business in Massachusetts at the time

of the transactions.    Chevy Chase Bank, F.S.B. was the Sponsor for the offerings in which the Bank purchased Certificates CCMFC 2006-2A A1, CCMFC 2007-1A A1 and CCMFC 2007-2A A1.  Chevy Chase Bank, F.S.B. was also the parent company and a controlling entity of Chevy Chase Funding LLC and originated loans for the offerings in which the Bank purchased Certificates CCMFC 2006-2A A1, CCMFC 2007-1A A1 and CCMFC 2007-2A A1.  During December 2008, Chevy Chase Bank, F.S.B. was acquired by and merged with and into Successor Defendants Capital One Financial Corporation and Capital One, National Association. *See infra* § III.C.  All references herein to Chevy Chase Bank, F.S.B. are also to Capital One Financial Corporation and Capital One, National Association, which are liable as a matter of law as successor to Chevy Chase Bank, F.S.B. and its subsidiaries, including Chevy Chase Funding LLC, by virtue of their status as the surviving entities in the acquisition of and merger with Chevy Chase Bank, F.S.B.

     **5.**     **The Citigroup Entities**

     52.     Depositor/Issuer Defendant Citicorp Mortgage Securities, Inc. is a Delaware corporation.  Citicorp Mortgage Securities, Inc. was the Depositor for Certificate CMALT 2007-A4 1A7.

     53.     Depositor/Issuer Defendant Citigroup Mortgage Loan Trust Inc. is a Delaware corporation.  Citigroup Mortgage Loan Trust Inc. was the Depositor for Certificate CMLTI 2005-9 1A1.

     54.     Underwriter and Corporate Seller Defendant Citigroup Global Markets Inc. is a New York corporation which, at all relevant times, has maintained a securities broker-dealer FINRA registration in Massachusetts and was and is registered to do business in Massachusetts.  Citigroup Global Markets Inc. underwrote Certificates LUM 2007-2 1A1, RALI 2006-QA2 1A1,

and CMLTI 2005-9 1A1.  Citigroup Global Markets Inc. also sold Certificates MARM 2005-7

2A1 and GPMF 2006-AR3 4A1 to the Bank.

55.     Sponsor Defendant Citigroup Global Markets Realty Corp. is a New York

corporation that was and is registered to do business in Massachusetts.  Citigroup Global

Markets Realty Corp. was the Sponsor for the offering in which the Bank purchased Certificate

CMLTI 2005-9 1A1.

56.     Sponsor and Controlling Person Defendant CitiMortgage, Inc. is a New York

corporation that was and is registered to do business in Massachusetts.  CitiMortgage, Inc. was

the Sponsor for the offering in which the Bank purchased Certificate CMALT 2007-A4 1A7.

CitiMortgage, Inc. is also a parent company and controlling entity of Citicorp Mortgage

Securities, Inc. and originated loans for the offering in which the Bank purchased Certificate

CMALT 2007-A4 1A7.

57.     Controlling Person Defendant Citigroup Financial Products, Inc. is a Delaware

corporation and is also a parent company and controlling entity of Citigroup Mortgage Loan

Trust Inc., Citigroup Global Markets Inc. and Citigroup Global Markets Realty Corp.

58.     Controlling Person Defendant Citigroup Inc. is a Delaware corporation.  Citigroup

Inc. is the parent company and controlling entity of Citicorp Mortgage Securities, Inc., Citigroup

Mortgage Loan Trust Inc., Citigroup Global Markets Inc., Citigroup Global Markets Realty

Corp., CitiMortgage, Inc. and Citigroup Financial Products, Inc.

**6.      The Countrywide Entities**

59.     Depositor/Issuer Defendant CWALT, Inc. is a Delaware corporation.  CWALT,

Inc. was the Depositor for Certificates CWALT 2007-OA9 A1, CWALT 2007-OA4 A1,

CWALT 2006-OA16 A2, CWALT 2006-OA8 1A1, CWALT 2005-86CB A10, and CWALT

2005-16 A4.

60.     Depositor/Issuer Defendant CWMBS, Inc. is a Delaware corporation.  CWMBS, Inc. was the Depositor for Certificate CWHL 2005-2 2A1.

61.     Underwriter Defendant Countrywide Securities Corporation is a California corporation.  Countrywide Securities Corporation underwrote Certificates IMM 2005-7 A1, CWALT 2007-OA9 A1, AHMA 2007-5 A1, AHMA 2007-2 A1, AHMA 2006-6 A1A, CWALT 2006-OA16 A2, IMSA 2006-2 1A2A, CWALT 2005-86CB A10, and IMSA 2005-2 A1.

62.     Sponsor Defendant Countrywide Home Loans, Inc. is a New York corporation that was and is registered to do business in Massachusetts.  Countrywide Home Loans, Inc. was the Sponsor for the offerings in which the Bank purchased Certificates CWALT 2007-OA9 A1, CWALT 2007-OA4 A1, CWALT 2006-OA16 A2, CWALT 2006-OA8 1A1, CWALT 2005-86CB A10, CWALT 2005-16 A4, and CWHL 2005-2 2A1.  Countrywide Home Loans, Inc. also originated loans for the offerings in which the Bank purchased Certificates BALTA 2007-1 1A1, BALTA 2006-7 1A1, BALTA 2006-5 1A1, BALTA 2006-2 11A1, MARM 2005-7 2A1, CWALT 2007-OA9 A1, CWALT 2007-OA4 A1, CWALT 2006-OA8 1A1, CWALT 2005-86CB A10, CWALT 2005-16 A4, CWHL 2005-2 2A1, DBALT 2006-AR4 A1, BALTA 2006-4 11A1, DBALT 2006-AR3 A2, JPALT 2006-A2 1A1, BAFC 2005-H 7A1, HVMLT 2007-1 2A1A, BCAP 2006-AA1 A1, SAMI 2006-AR7 A1A, SAMI 2006-AR6 1A1, HVMLT 2005-10 2A1A, BAFC 2006-D 1A1, SAMI 2005-AR2 1A1, SAMI 2006-AR4 4A1, CWALT 2006-OA16 A2, MARM 2005-8 1A1, ARMT 2006-3 4A2, ARMT 2007-2 2A21, BALTA 2005-9 11A1, LUM 2005-1 A1, ARMT 2006-1 6A1, BALTA 2006-6 1A1, and LUM 2006-6 A1.

63.     Controlling Person Defendant Countrywide Financial Corporation is a Delaware corporation.  At the time the Bank acquired the relevant Certificates, Countrywide Financial Corporation was a holding company which, through its subsidiaries, was engaged in mortgage

lending and other real estate finance-related businesses, including mortgage banking, banking and mortgage warehouse lending, dealing in securities and insurance underwriting. Countrywide Financial Corporation managed its business through five business segments: Mortgage Banking; Banking; Capital Markets; Insurance; and Global Operations. The Mortgage Banking segment was Countrywide Financial Corporation's core business and generated 48% of the Countrywide Financial Corporation's pre-tax earnings in 2006. Countrywide Financial Corporation is the parent company and a controlling entity of CWALT, Inc., CWMBS, Inc., Countrywide Securities Corporation and Countrywide Home Loans, Inc.

64.    Bank of America Corporation is also named as a Successor Defendant to CWALT, Inc., CWMBS, Inc., Countrywide Securities Corporation, Sponsor Defendant Countrywide Home Loans, Inc., and Controlling Person Defendant Countrywide Financial Corporation. *See infra* § IV.C.  As set forth below, on or about July 1, 2008, Successor Defendant Bank of America Corporation acquired Countrywide Financial Corporation and all of its subsidiaries, including CWALT, Inc., CWMBS, Inc., Countrywide Securities Corporation, and Countrywide Home Loans, Inc.

### 7.    The Credit Suisse Entities

65.    Depositor/Issuer Defendant Credit Suisse First Boston Mortgage Securities Corp. is a Delaware corporation that was and is registered to do business in Massachusetts.  Credit Suisse First Boston Mortgage Securities Corp. was the Depositor/Issuer for Certificates ARMT 2007-2 2A21, ARMT 2007-1 5A1, ARMT 2006-3 4A2, ARMT 2006-1 6A1, and ARMT 2006-2 6A1.

66.    Sponsor and Underwriter Defendant Credit Suisse Securities (USA) LLC is a Delaware limited liability company which, at all relevant times, has maintained a securities broker-dealer FINRA registration in Massachusetts and was and is registered to do business in

Massachusetts.  Credit Suisse Securities (USA) LLC underwrote Certificates CCMFC 2006-2A A1, CCMFC 2007-1A A1, CCMFC 2007-2A A1, ARMT 2007-2 2A21, ARMT 2007-1 5A1, TMST 2007-1 A2A, ARMT 2006-3 4A2, ARMT 2006-2 6A1, ARMT 2006-1 6A1, and MHL 2006-1 1A2.  Credit Suisse Securities (USA) LLC was also the Sponsor for the offering in which the Bank purchased Certificate ARMT 2006-2 6A1.

67.     Sponsor Defendant DLJ Mortgage Capital, Inc. is a Delaware corporation that was and is registered to do business in Massachusetts.  DLJ Mortgage Capital Inc. was the Sponsor for the offerings in which the Bank purchased Certificates ARMT 2007-2 2A21, ARMT 2007-1 5A1, ARMT 2006-3 4A2, and ARMT 2006-1 6A1.  DLJ Mortgage Capital, Inc. also originated loans for the offering in which the Bank purchased Certificates ARMT 2007-2 2A21, ARMT 2006-2 6A1, ARMT 2006-3 4A2, and ARMT 2007-1 5A1.

68.     Controlling Person Defendant Credit Suisse (USA), Inc. is a Delaware corporation that was and is registered to do business in Massachusetts.  Credit Suisse (USA), Inc. is a parent company and controlling entity of Credit Suisse Securities (USA) LLC, and DLJ Mortgage Capital Inc.

69.     Controlling Person Defendant Credit Suisse Holdings (USA), Inc. is a Delaware corporation that was and is registered to do business in Massachusetts.  Credit Suisse Holdings (USA), Inc. is the parent company and a controlling entity of Credit Suisse First Boston Mortgage Securities Corp.; Credit Suisse Securities (USA) LLC; DLJ Mortgage Capital, Inc.; and Credit Suisse (USA) Inc.

70.     The Credit Suisse Entities identified in paragraphs 65 through 69 above are also affiliates, under common ownership, of Credit Suisse Financial Corporation, which originated

loans for the offerings in which the Bank purchased Certificates ARMT 2006-1 6A1, ARMT

2006-2 6A1, ARMT 2006-3 4A2, ARMT 2007-1 5A1, and ARMT 2007-2 2A21.

**8.     The Deutsche Entities**

71.     Depositor/Issuer Defendant Deutsche Alt-A Securities, Inc. is a Delaware

corporation.  Deutsche Alt-A Securities, Inc. was the Depositor/Issuer for Certificates DBALT

2006-AR2 1A1, DBALT 2006-AR2 1A2, DBALT 2006-AR3 A2, DBALT 2006-AR4 A1,

DBALT 2006-AR5 1A1, DBALT 2007-AR1 A1, and DBALT 2007-AR3 2A1.

72.     Underwriter and Corporate Seller Defendant Deutsche Bank Securities Inc. is a

Delaware corporation which, at all relevant times, has maintained a securities broker-dealer

FINRA registration in Massachusetts and was and is registered to do business in Massachusetts.

Deutsche Bank Securities Inc. underwrote Certificates DBALT 2006-AR2 1A1, DBALT 2006-

AR2 1A2, DBALT 2006-AR3 A2, DBALT 2006-AR4 A1, DBALT 2006-AR5 1A1, DBALT

2007-AR1 A1, DBALT 2007-AR3 2A1, and RALI 2006-QA3 A1.  Deutsche Bank Securities

Inc. also sold Certificate JPMMT 2005-ALT1 2A1 to the Bank.

73.     Sponsor and Controlling Person Defendant DB Structured Products, Inc. is a

Delaware corporation that was and is registered to do business in Massachusetts.  DB Structured

Products, Inc. was the Sponsor for the deals in which the Bank purchased Certificates DBALT

2006-AR2 1A1, DBALT 2006-AR2 1A2, DBALT 2006-AR3 A2, DBALT 2006-AR4 A1,

DBALT 2006-AR5 1A1, DBALT 2007-AR1 A1, and DBALT 2007-AR3 2A1.  DB Structured

Products, Inc. was also a parent company and controlling entity of Deutsche Alt-A Securities,

Inc.

74.     DB Structured Products, Inc. is also named as a Successor Defendant to

MortgageIT Holdings, Inc., MortgageIT, Inc. and MortgageIT Securities Corp.  *See infra* § IV.C.

As set forth below, on or about July 11, 2006, Successor Defendant DB Structured Products, Inc.

acquired MortgageIT Holdings, Inc. and all of its subsidiaries, including MortgageIT, Inc. and MortgageIT Securities Corp.

75.     Controlling Person Defendant DB U.S. Financial Market Holding Corporation is a Delaware corporation. DB U.S. Financial Market Holding Corporation is a parent company and controlling entity of Deutsche Alt-A Securities, Inc.; Deutsche Bank Securities Inc.; and DB Structured Products, Inc.

### 9.     Goldman, Sachs & Co.

76.     Underwriter Defendant Goldman, Sachs & Co. is a New York corporation which, at all relevant times, has maintained a securities broker-dealer FINRA registration in Massachusetts and was and is registered to do business in Massachusetts. Goldman, Sachs & Co underwrote Certificates AHM 2005-2 1A1, CWALT 2007-OA4 A1 and RALI 2006-QO10 A1.

### 10.     The Greenwich Entities

77.     Depositor/Issuer Defendant Greenwich Capital Acceptance, Inc. is a Delaware corporation. Greenwich Capital Acceptance, Inc. was the Depositor for Certificates DSLA 2005-AR1 2A1A, DSLA 2005-AR2 2A1A, HVMLT 2007-1 2A1A, HVMLT 2006-8 2A1A, HVMLT 2006-7 2A1A, MHL 2006-1 1A2, and HVMLT 2005-10 2A1A. Pursuant to its Restated Certificate of Incorporation, dated July 8, 2009, Greenwich Capital Acceptance, Inc. legally changed its name to RBS Acceptance Inc. All references herein to Greenwich Capital Acceptance, Inc. are also to RBS Acceptance Inc.

78.     Underwriter Defendant Greenwich Capital Markets, Inc. is a Delaware corporation which, at all relevant times, has maintained a securities broker-dealer FINRA registration in Massachusetts and was and is registered to do business in Massachusetts. Greenwich Capital Markets, Inc. underwrote Certificates AHM 2005-2 1A1, DSLA 2005-AR1 2A1A, DSLA 2005-AR2 2A1A, NAA 2006-AR4 A2, NAA 2007-1 2A1, LUM 2007-2 1A1,

CMALT 2007-A4 1A7, TMST 2007-1 A2A, HVMLT 2007-1 2A1A, HVMLT 2006-8 2A1A, HVMLT 2006-7 2A1A, MHL 2006-1 1A2, HVMLT 2005-10 2A1A, INDX 2005-AR8 2A1A, INDX 2005-AR4 2A1A, and INDX 2005-AR12 2A1a.  Pursuant to its Restated Certificate of Incorporation, dated April 1, 2009, Greenwich Capital Markets, Inc. legally changed its name to RBS Securities Inc.  All references herein to Greenwich Capital Markets, Inc. are also to RBS Securities Inc.

      79.     Sponsor Defendant Greenwich Capital Financial Products, Inc. is a Delaware corporation that was and is registered to do business in Massachusetts.  Greenwich Capital Financial Products, Inc. was the Sponsor for the offerings in which the Bank purchased Certificates 2005-AR1 2A1A, HVMLT 2007-1 2A1A, HVMLT 2006-8 2A1A, HVMLT 2006-7 2A1A, and HVMLT 2005-10 2A1A.  Pursuant to its Restated Certificate of Incorporation, dated April 1, 2009, Greenwich Capital Financial Products, Inc. legally changed its name to RBS Financial Products Inc.  All references herein to Greenwich Capital Financial Products, Inc. are also to RBS Financial Products Inc.

      80.     Controlling Person Defendant Greenwich Capital Holdings, Inc., a Delaware corporation, is the parent company and a controlling entity of Greenwich Capital Acceptance, Inc., Greenwich Capital Markets, Inc. and Greenwich Capital Financial Products, Inc.  Greenwich Capital Holdings, Inc. legally changed its name to RBS Holdings USA Inc.  All references herein to Greenwich Capital Holdings, Inc. are also to RBS Holdings USA Inc.

**11.    The Impac Entities**

      81.     Depositor/Issuer Defendant IMH Assets Corp. is a California corporation.  IMH Assets Corp. was the Depositor for Certificate IMM 2005-7 A1.

82.     Depositor/Issuer Defendant Impac Secured Assets Corp. is a California corporation. Impac Secured Assets Corp. was the Depositor for Certificates IMSA 2005-2 A1 and IMSA 2006-2 1A2A.

83.     Sponsor and Controlling Person Defendant Impac Funding Corporation is a California corporation that was and is registered to do business in Massachusetts. Impac Funding Corporation was the Sponsor for the offerings in which the Bank purchased Certificates IMSA 2006-2 1A2A and IMSA 2005-2 A1. Impac Funding Corporation is also the parent company and a controlling entity of Impac Secured Assets Corp.

84.     Sponsor and Controlling Person Defendant Impac Mortgage Holdings, Inc. is a Maryland corporation. Impac Mortgage Holdings, Inc. was the Sponsor for the offering in which the Bank purchased Certificate IMM 2005-7 A1. Impac Mortgage Holdings, Inc. is also the parent company and a controlling entity of IMH Assets Corp., Impac Secured Assets Corp. and Impac Funding Corporation.

**12.     The J.P. Morgan Entities**

85.     Depositor/Issuer Defendant J.P. Morgan Acceptance Corporation I is a Delaware corporation. J.P. Morgan Acceptance Corporation I was the Depositor for Certificates JPALT 2007-A2 12A1, JPALT 2006-A3 1A1, JPALT 2006-A2 1A1, JPALT 2006-A1 1A1, and JPMMT 2005-ALT1 2A1.

86.     Underwriter Defendant J.P. Morgan Securities Inc., a Delaware corporation, changed its name and organization to J.P. Morgan Securities LLC, a Delaware limited liability company, on or about September 1, 2010. This entity will simply be referred to as "J.P. Morgan Securities Inc."[6] It has, at all relevant times, maintained a securities broker-dealer FINRA registration in Massachusetts and was and is registered to do business in Massachusetts. J.P.

---

[6] *See* footnote 5, *supra.*

Morgan Securities Inc. underwrote Certificates JPALT 2007-A2 12A1, JPALT 2006-A3 1A1, JPALT 2006-A2 1A1, and JPALT 2006-A1 1A1.

87.     Sponsor Defendant J.P. Morgan Mortgage Acquisition Corp. is a Delaware corporation.  J.P. Morgan Mortgage Acquisition Corp. was the Sponsor for the offerings in which the Bank purchased Certificates JPALT 2006-A2 1A1, JPALT 2006-A1 1A1, JPALT 2007-A2 12A1, JPALT 2006-A3 1A1, and JPMMT 2005-ALT1 2A1.

88.     At all relevant times, Controlling Person Defendant JPMorgan Securities Holdings LLC, a Delaware limited liability company, was the parent company and a controlling entity of J.P. Morgan Acceptance Corporation I and J.P. Morgan Securities Inc.

89.     Controlling Person Defendant JPMorgan Chase & Co., a Delaware corporation, is the parent company and a controlling entity of JPMorgan Securities Holdings LLC, J.P. Morgan Acceptance Corporation I, J.P. Morgan Securities Inc. and J.P. Morgan Mortgage Acquisition Corp.  JP Morgan Chase & Co. is also the parent company of both Chase Home Finance LLC and JPMorgan Chase Bank, N.A. which originated loans for the offerings in which the Bank purchased Certificates JPALT 2007-A2 12A1, JPALT 2006-A2 1A1, JPALT 2006-A3 1A1, and JPALT 2006-A1 1A1.

### 13.     The Lehman Individual Defendants

90.     Seller and Controlling Person Defendant Lana Franks is an individual residing in New York.  Franks was Chairman, President and Principal Executive Officer and a Director of Structured Asset Securities Corporation, which was the Depositor for Certificates LXS 2005-8 1A2, LXS 2006-15 A1, LXS 2007-9 1A1, and LXS 2007-11 A1 (together the "Lehman Certificates").  Frank was a signatory on the Registration Statement for Certificates LXS 2006-15 A1, LXS 2007-9 1A1 and LXS 2007-11 A1.  Structured Asset Securities Corporation was a subsidiary of Lehman Brothers Holdings Inc., the Sponsor for all four Lehman Certificates.

Franks also served as a Manager of Aurora Loan Services LLC, another Lehman Brothers Holdings Inc. subsidiary, which was an originator of loans for the offerings in which the Bank purchased all four Lehman Certificates.

91.     Controlling Person Defendant Richard S. Fuld, Jr. is an individual residing in Florida.  Between at least 2005 and 2007, Fuld was the Chairman and Chief Executive Officer and a Director of Sponsor Lehman Brothers Holdings Inc., as well as chair of Lehman Brothers Holdings Inc's. Executive Committee and Risk Committee.  During 2005, Fuld was the Chief Executive Officer and President of Lehman Brothers, Inc., a Lehman Brothers Holdings Inc. subsidiary and the Underwriter for all four Lehman Certificates.  During 2006 and 2007, Fuld was the Chief Executive Officer and Chairman and a Director of Lehman Brothers Inc.

92.     Seller and Controlling Person Defendant Edward Grieb is an individual residing in New York.  Beginning no later than 2006, Grieb was the Chief Financial Officer of Structured Asset Securities Corporation.  Grieb was signatory on the Registration Statement for Certificates LXS 2006-15 A1, LXS 2007-9 1A1, and LXS 2007-11 A1.  From at least 2005 through 2007, Grieb also served as a Manager of Originator Aurora Loan Services LLC.

93.     Seller and Controlling Person Defendant Richard McKinney is an individual residing in New York.  Beginning no later than 2006, McKinney was a Director of Structured Asset Securities Corporation.  McKinney was a signatory on the Registration Statement for Certificates LXS 2006-15 A1, LXS 2007-9 1A1, and LXS 2007-11 A1.

94.     Controlling Person Defendant Barry J. O'Brien is an individual residing in New Jersey.  During at least 2005 and 2007, O'Brien was the Treasurer of Sponsor Lehman Brothers Holdings Inc.  From at least 2005 through 2007, O'Brien was the First Vice President of Underwriter Lehman Brothers, Inc.

95.     Controlling Person Defendant Christopher M. O'Meara is an individual residing in New York. O'Meara was the Chief Financial Officer, Controller and Executive Vice President of Sponsor Lehman Brothers Holdings Inc. from 2004 until 2007, when he became the Global Head of Risk Management for Lehman Brothers Holdings Inc. O'Meara was also a member of the Lehman Brothers Holdings Inc. Risk Committee at all relevant times. During at least 2005 through 2007 O'Meara was the Chief Financial Officer of Underwriter Lehman Brothers, Inc.

96.     Seller and Controlling Person Defendant Kristine Smith is an individual who, on information and belief, resides in New York. Beginning no later than 2006, Smith was the Controller and Principal Accounting Officer of Structured Asset Securities Corporation. Smith was signatory on the Registration Statement for Certificates LXS 2006-15 A1, LXS 2007-9 1A1, and LXS 2007-11 A1.

97.     Seller and Controlling Person Defendant James J. Sullivan is an individual residing in New York. Beginning no later than 2005, Sullivan was a Director of Structured Asset Securities Corporation. Sullivan was signatory on the Registration Statement for all four Lehman Certificates.

98.     Seller and Controlling Person Defendant Samir Tabet is an individual residing in New York. During at least 2005, Tabet was the Managing Director of Structured Asset Securities Corporation. Tabet was signatory on the Registration Statement for Certificates LXS 2005-8 1A2.

99.     Seller and Controlling Person Defendant Mark L. Zusy is an individual residing in Florida. During at least 2005, Zusy was the Chairman, President and a Director of Structured

Asset Securities Corporation. Zusy was signatory on the Registration Statement for Certificates LXS 2005-8 1A2.

100.     Defendants Franks, Fuld, Grieb, McKinney, Smith, Sullivan, Tabet and Zusy are referred to collectively as the "Individual Controlling Person Defendants."

101.     Defendants Franks, Grieb, McKinney, O'Brien, O'Meara, Smith, Sullivan, Tabet and Zusy are referred to as the "Individual Seller Defendants."

**14.     The Merrill Lynch Entities**

102.     Depositor/Issuer Defendant Merrill Lynch Mortgage Investors, Inc., is a Delaware corporation. Merrill Lynch Mortgage Investors, Inc. was the Depositor for Certificates MANA 2007-A3 A2A and MLMI 2006-AF2 AV2A.

103.     Underwriter and Successor Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated is a Delaware corporation which, at all relevant times, has maintained a securities broker-dealer FINRA registration in Massachusetts and was and is registered to do business in Massachusetts. Merrill Lynch, Pierce, Fenner & Smith Incorporated underwrote Certificates IMSA 2006-2 1A2A, INDX 2006-AR19 1A1, MANA 2007-A3 A2A, MHL 2005-5 A1, MLMI 2006-AF2 AV2A and NAA 2006-AF2 5A1. A Merrill Lynch entity believed and alleged to be Merrill Lynch, Pierce, Fenner & Smith Incorporated sold Certificate MLMI 2006-AF2 AV2A to the Bank. Effective November 1, 2010, Banc of America Securities LLC merged with and into Successor Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated, a Delaware corporation. All references herein to Banc of America Securities LLC are also to Merrill Lynch, Pierce, Fenner & Smith Incorporated, which is liable as a matter of law as successor to Banc of America Securities LLC by virtue of its status as the surviving entity in its merger with Banc of America Securities LLC.

104.    Sponsor Defendant Merrill Lynch Mortgage Lending, Inc. is a Delaware corporation that was and is registered to do business in Massachusetts. Merrill Lynch Mortgage Lending, Inc. was the Sponsor for the offerings in which the Bank purchased Certificates MANA 2007-A3 A2A and MLMI 2006-AF2 AV2A.

105.    Controlling Person Defendant Merrill Lynch & Co., Inc. is a Delaware corporation. Merrill Lynch & Co., Inc. is the parent corporation and a controlling entity of Merrill Lynch Mortgage Investors, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; and Merrill Lynch Mortgage Lending, Inc.

106.    Bank of America Corporation is also named as a Successor Defendant to Merrill Lynch Mortgage Investors, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Merrill Lynch Mortgage Lending, Inc.; and Merrill Lynch & Co., Inc. *See infra* § IV.C. As set forth below, on or about January 1, 2009, Successor Defendant Bank of America Corporation acquired Merrill Lynch & Co., Inc. and all of its subsidiaries, including Merrill Lynch Mortgage Investors, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; and Merrill Lynch Mortgage Lending, Inc.

### 15.    The Morgan Stanley Entities

107.    Depositor/Issuer Defendant Morgan Stanley Capital I Inc. is a Delaware corporation. Morgan Stanley Capital I Inc. was the Depositor for Certificates MSM 2006-13AX A1, MSM 2006-16AX 2A1, MSM 2006-8AR 1A2, MSM 2006-9AR A3, MSM 2007-2AX 2A2, MSM 2007-5AX 2A2, and MSM 2007-7AX 2A1.

108.    Underwriter and Controlling Person Defendant Morgan Stanley & Co. Incorporated is a Delaware corporation which, at all relevant times, has maintained a securities broker-dealer FINRA registration in Massachusetts and was and is registered to do business in Massachusetts. Morgan Stanley & Co. Incorporated underwrote Certificates CMALT 2007-A4

1A7, CWALT 2005-86CB A10, LUM 2005-1 A1, MSM 2006-13AX A1, MSM 2006-16AX

2A1, MSM 2006-8AR 1A2, MSM 2006-9AR A3, MSM 2007-2AX 2A2, MSM 2007-5AX 2A2,

and MSM 2007-7AX 2A1.  Morgan Stanley & Co. Incorporated was also a controlling entity of

Morgan Stanley Mortgage Capital Inc.

109.    Sponsor Non-Defendant Morgan Stanley Mortgage Capital Inc. was a New York

corporation that was registered to do business in Massachusetts.  Morgan Stanley Mortgage

Capital Inc. was the Sponsor for the offerings in which the Bank purchased Certificates MSM

2006-13AX A1, MSM 2006-16AX 2A1, MSM 2006-8AR 1A2, MSM 2006-9AR A3, MSM

2007-2AX 2A2, MSM 2007-5AX 2A2, and MSM 2007-7AX 2A1.  Morgan Stanley Mortgage

Capital Inc. also originated loans for the offerings in which the Bank purchased Certificates

MSM 2006-13AX A1, MSM 2006-16AX 2A1, MSM 2006-8AR 1A2, MSM 2006-9AR A3,

MSM 2007-2AX 2A2, MSM 2007-5AX 2A2, and MSM 2007-7AX 2A1.  Effective June 17,

2007, Morgan Stanley Mortgage Capital Inc. merged with and into Successor Defendant Morgan

Stanley Mortgage Capital Holdings LLC, a New York limited liability company that is registered

to do business in Massachusetts.  *See infra* § IV.C.  Since the merger, Morgan Stanley Mortgage

Capital Holdings LLC has continued the business of Morgan Stanley Mortgage Capital Inc.  All

references to Morgan Stanley Mortgage Capital Inc. are also to Morgan Stanley Mortgage

Capital Holdings LLC, which is liable as a matter of law as successor to Morgan Stanley

Mortgage Capital Inc. by virtue of its status as the surviving entity in its merger with Morgan

Stanley Mortgage Capital Inc.

110.    Controlling Person Defendant Morgan Stanley is a financial holding company

organized under the laws of Delaware.  Morgan Stanley is the parent company and a controlling

entity of Morgan Stanley Capital I Inc., Morgan Stanley & Co. Incorporated, and was a parent company and controlling entity of Morgan Stanley Mortgage Capital Inc.

### 16.   The MortgageIT Entities

111.   Depositor/Issuer Defendant MortgageIT Securities Corp. is a Delaware corporation.  MortgageIT Securities Corp. was the Depositor/Issuer for Certificate MHL 2005-5 A1.

112.   Sponsor and Controlling Person Defendant MortgageIT, Inc. is a New York corporation that was and is registered to do business in Massachusetts.  MortgageIT, Inc. was the Sponsor for the offering in which the Bank purchased Certificate MHL 2006-1 1A2. MortgageIT, Inc. is the parent company and a controlling entity of MortgageIT Securities Corp. MortgageIT, Inc. also originated loans for the transactions in which the Bank purchased Certificates CWALT 2006-OA16 A2, DBALT 2006-AR3 A2, DBALT 2006-AR4 A1, DBALT 2007-AR1 A1, DBALT 2007-AR3 2A1, LUM 2006-6 A1, MARM 2005-7 2A1, MHL 2005-5A1, MHL 2006-1 1A2, MSM 2006-16AX 2A1, RALI 2006-QA2 1A1, and RALI 2006-QA3 A1.

113.   Sponsor and Controlling Person Non-Defendant MortgageIT Holdings, Inc. was a Maryland corporation.  MortgageIT Holdings, Inc. was the Sponsor for the offering in which the Bank purchased Certificate MHL 2005-5 A1.  MortgageIT Holdings, Inc. was also the parent company and a controlling entity of MortgageIT Securities Corp. and MortgageIT, Inc.  On or about July 11, 2006, MortgageIT Holdings, Inc. was acquired by and merged with and into Successor Defendant DB Structured Products, Inc.  *See infra* § IV.C.  All references herein to MortgageIT Holdings, Inc. are also to DB Structured Products, Inc., which is liable as a matter of law as successor to MortgageIT Holdings, Inc. by virtue of its status as the surviving entity in the acquisition of and merger with MortgageIT Holdings, Inc.  DB Structured Products, Inc. is

named as a Successor Defendant to MortgageIT Holdings, Inc., and its former subsidiaries, including MortgageIT, Inc., and MortgageIT Securities Corp.

### 17.   The Nomura Entities

114.   Depositor/Issuer Defendant Nomura Asset Acceptance Corporation is a Delaware corporation.  Nomura Asset Acceptance Corporation was the Depositor for Certificates NAA 2006-AF2 5A1, NAA 2006-AR4 A2, NAA 2007-1 2A1, and NAA 2007-3 A1.

115.   Underwriter Defendant Nomura Securities International, Inc. is a Delaware corporation which, at all relevant times, has maintained a securities broker-dealer FINRA registration in Massachusetts and was and is registered to do business in Massachusetts.  Nomura Securities International, Inc. underwrote Certificate NAA 2006-AF2 5A1.

116.   Sponsor Defendant Nomura Credit & Capital, Inc. is a Delaware corporation that was and is registered to do business in Massachusetts.  Nomura Credit & Capital, Inc. was the Sponsor for the offerings in which the Bank purchased Certificates NAA 2006-AF2 5A1, NAA 2006-AR4 A2, NAA 2007-1 2A1, and NAA 2007-3 A1.

117.   Controlling Person Defendant Nomura Holding America, Inc., a Delaware corporation, is the parent company and a controlling entity of Nomura Asset Acceptance Corporation, Nomura Securities International, Inc., and Nomura Credit & Capital, Inc.

### 18.   The Residential Funding (GMAC) Entities

118.   Depositor/Issuer Defendant Residential Accredit Loans, Inc. is a Delaware corporation.  Residential Accredit Loans, Inc. was the Depositor for Certificates RALI 2005-QA9 NB41, RALI 2006-QA2 1A1, RALI 2006-QA3 A1, RALI 2006-QO10 A1, and RALI 2007-QS6 A29.

119.   Sponsor Defendant Residential Funding Company, LLC, previously known as Residential Funding Corporation until it changed its name on October 16, 2006 (hereafter

together referred to as "Residential Funding Company, LLC"), is a Delaware limited liability company that was and is registered to do business in Massachusetts. Residential Funding Company, LLC was the Sponsor for the offerings in which the Bank purchased Certificates RALI 2006-QO10 A1, RALI 2007-QS6 A29, RALI 2005-QA9 NB41, RALI 2006-QA2 1A1, and RALI 2006-QA3 A1. Residential Funding Company, LLC, doing business as Residential Mortgage Corporation, also originated loans for the offering in which the Bank purchased Certificate LUM 2006-6 A1. Residential Funding Company, LLC is also the parent company and a controlling entity of Homecomings Financial Network Inc., which is now known as Homecomings Financial, LLC but will together be referred to as "Homecomings Financial Network Inc." Homecomings Financial Network Inc. originated loans for the offerings in which the Bank purchased Certificates RALI 2005-QA9 NB41, RALI 2006-QA2 1A1, RALI 2006-QA3 A1, RALI 2006-QO10 A1, and RALI 2007-QS6 A29.

120.    Controlling Person Defendant GMAC Mortgage Group, Inc., a Delaware corporation, is now known as GMAC Mortgage Group LLC, a Delaware limited liability company. This entity will be referred to simply as "GMAC Mortgage Group, Inc." GMAC Mortgage Group, Inc. is a parent company and controlling entity of Residential Accredit Loans, Inc. and Residential Funding Company, LLC, as well as Homecomings Financial Network Inc.

121.    Controlling Person Defendant GMAC LLC was a Delaware limited liability company that was registered to do business in Massachusetts. In June 2009, GMAC LLC converted to a Delaware corporation and changed its name to GMAC Inc. and in May 2010, GMAC Inc. changed its name to Ally Financial, Inc. All references to GMAC LLC are also to GMAC Inc. and Ally Financial, Inc. GMAC LLC is the parent company and a controlling entity of Residential Accredit Loans, Inc.; Residential Funding Company, LLC; and GMAC Mortgage

Group, Inc.  GMAC LLC is also the parent company and a controlling entity of Homecomings Financial Network Inc. and GMAC Mortgage Corporation.  GMAC Mortgage Corporation is now known as GMAC Mortgage, LLC, but this entity will be referred to simply as "GMAC Mortgage Corporation."  GMAC Mortgage Corporation originated loans for the offerings in which the Bank purchased Certificates LUM 2006-6 A1 and RALI 2007-QS6 A29.

### 19.   Sandler, O'Neill & Partners, L.P.

122.   Corporate Seller Defendant Sandler, O'Neill & Partners, L.P. is a Delaware limited partnership which, at all relevant times, has maintained a securities broker-dealer FINRA registration in Massachusetts and is registered to do business in Massachusetts.  Sandler, O'Neill & Partners, L.P., which maintains an office at 50 Congress Street, Suite 330 Boston, MA, 02109, provides brokerage and investment banking services.  Sandler, O'Neill & Partners, L.P. sold Certificate TMTS 2007-6ALT A1 to the Bank.

### 20.   The UBS Entities

123.   Depositor/Issuer Defendant Mortgage Asset Securitization Transactions, Inc. is a Delaware corporation.  Mortgage Asset Securitization Transactions, Inc. was the Depositor for Certificates MARM 2005-7 2A1, MARM 2005-8 1A1, and MARM 2007-R5 A1.

124.   Underwriter, Corporate Seller, and Sponsor Defendant UBS Securities LLC is a Connecticut limited liability company which, at all relevant times, has maintained a securities broker-dealer FINRA registration in Massachusetts and was and is registered to do business in Massachusetts.  UBS Securities LLC underwrote Certificates AHM 2005-2 1A1, CWALT 2005-16 A4, CWALT 2006-OA8 1A1, IMM 2005-7 A1, IMSA 2005-2 A1, MARM 2005-8 1A1, MARM 2007-R5 A1, MHL 2006-1 1A2, NAA 2006-AR4 A2, and RALI 2005-QA9 NB41.  UBS Securities LLC also sold Certificate LUM 2006-3 11A1 to the Bank.  UBS Securities LLC

35

was also the Sponsor for the offering in which the Bank purchased Certificate MARM 2007-R5 A1.

125.    Sponsor Defendant UBS Real Estate Securities Inc. is a Delaware corporation that was and is registered to do business in Massachusetts.  UBS Real Estate Securities Inc. was the Sponsor for the offerings in which the Bank purchased Certificates MARM 2005-7 2A1 and MARM 2005-8 1A1.

126.    Controlling Person Defendant UBS Americas Inc. is a Delaware corporation. UBS Americas Inc. is the parent company and a controlling entity of Mortgage Asset Securitization Transactions, Inc., UBS Real Estate Securities Inc., and the parent company (owner of the preferred members' interest) of UBS Securities LLC.

### 21.    WaMu Capital Corp.

127.    Underwriter Defendant WaMu Capital Corp. is a Washington corporation that was registered to do business in Massachusetts during the relevant period.  WaMu Capital Corp. underwrote Certificates DSLA 2005-AR1 2A1A and DSLA 2005-AR2 2A1A.

### 22.    The Wells Fargo Defendants

128.    Depositor Defendant Wells Fargo Asset Securities Corporation is a Delaware corporation.  Wells Fargo Asset Securities Corporation was the depositor for Certificate WFMBS 2006 AR12 1A1.

129.    Sponsor and Controlling Person Defendant Wells Fargo Bank, National Association, is a nationally chartered bank and is regulated by the OCC.  Wells Fargo Bank, National Association was the Sponsor for the offerings in which the Bank purchased Certificate WFMBS 2006 AR12 1A1 and an originator of loans for the offering in which the Bank purchased Certificate WFMBS 2006 AR12 1A1s GSR 2006-AR1 2A3, GSR 2005-1F 3A1, WFMBS 2007-10 1A10, WFMBS 2005-AR12 2A2, WFMBS 2006-10 A7, WFMBS 2007-4

A16 and WFMBS 2007-11 A2.  Wells Fargo Bank, National Assocation is also the parent corporation and controlling entity of Wells Fargo Asset Securities Corporation.

130.    Controlling Person Defendant Wells Fargo & Company, a Delaware corporation, is the parent corporation, with 100% direct or indirect ownership, and controlling entity of Wells Fargo Asset Securities Corporation and Wells Fargo Bank, National Association.

**23.    The Securities Defendants**

131.    The Defendants identified in paragraphs 37 through 130 are referred to collectively herein as the "Securities Defendants."

**24.    The Rating Agency Defendants**

132.    Defendant Fitch, Inc. (also doing business as Fitch Ratings) ("Fitch") is a Delaware corporation that was and is registered to do business in Massachusetts.  Fitch provides analysis of global credit markets covering corporate finance, including financial institutions and insurance, structured finance, public finance, global infrastructure and project finance.

133.    Defendant The McGraw-Hill Companies, Inc. is a New York corporation that was and is registered to do business in Massachusetts.  The McGraw-Hill Companies, Inc. maintains an office at 420 Boylston Street in Boston, Massachusetts.  Through its credit rating division, Standard & Poor's Ratings Services, which maintains an office at 225 Franklin Street in Boston, Massachusetts, The McGraw-Hill Companies, Inc. provided global credit ratings, indices, risk evaluation, investment research and data to investors, corporations, governments, financial institutions, investment managers and advisors.  At the time the Bank purchased the Certificates, The McGraw-Hill Companies, Inc. was a provider serving the financial services, education and business information markets through three business segments:  McGraw-Hill Education, Financial Services, and Information and Media.

134.    Effective January 1, 2009, The McGraw-Hill Companies, Inc. transferred certain assets and properties associated with its Standard & Poor's division to Standard & Poor's Financial Services LLC.  This Complaint refers to The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC collectively as "S&P."

135.    Defendant Moody's Investors Service, Inc. is a Delaware corporation which, at relevant times, was registered to do business in Massachusetts and maintains an office at 175 Federal Street in Boston, Massachusetts.  Moody's Investors Service, Inc., which is a wholly owned subsidiary of Defendant Moody's Corporation, provides credit ratings and research covering debt instruments and securities.

136.    Defendant Moody's Corporation is a Delaware corporation.  Moody's Corporation is a provider of credit ratings; credit and economic related research, data and analytical tools; risk management software; and quantitative credit risk measures, credit portfolio management solutions, training and financial credentialing and certification services.  This Complaint refers to Moody's Investors Service, Inc. and Moody's Corporation collectively as "Moody's."

C.    **Successor Liability Allegations against Certain Defendants**

1.    **Successor Defendant Bank of America Corporation (Countrywide)**

137.    On July 1, 2008, Successor Defendant Bank of America Corporation acquired Countrywide Financial Corporation and those it controlled, including Depositor/Issuer Defendants CWALT, Inc. and CWMBS, Inc., Underwriter Defendant Countrywide Securities Corporation, and Sponsor Defendant Countrywide Home Loans, Inc. through an all-stock merger.  In this transaction, Countrywide Financial Corporation merged with and into Bank of America Corporation, which acquired substantially all Countrywide Financial Corporation assets and responsibility for all pre-merger liabilities.  *See* Agreement and Plan of Merger by and

among Countrywide Financial Corporation, Bank of America Corporation and Red Oak Merger Corporation (Jan. 11, 2008).

138.    At the time of the transaction, Bank of America announced that it intended to combine Countrywide's operations with its own and re-brand those combined operations with the Bank of America name.  Bank of America further announced that Barbara Desoer would run the combined mortgage and consumer real estate operations from Calabasas, California, where Countrywide Financial had its headquarters, and that Countrywide Financial's incumbent president, David Sambol, would remain for at least some time to work on the transition.

139.    On October 16, 2008, Bank of America announced that Countrywide Financial Corporation would no longer publicly report its own financial results and that Bank of America was transferring "substantially all of the assets and operations of Countrywide Financial Corporation and Countrywide Home Loans, Inc. to other subsidiaries of Bank of America."

140.    On November 10, 2008, Bank of America publicly announced through an SEC filing on Form 8-K the integration of Countrywide Financial Corporation (and its subsidiaries) with Bank of America's other businesses and operations. That filing once again disclosed that Bank of America had transferred substantially all of Countrywide Financial Corporation's assets to Bank of America.

141.    On April 27, 2009, Bank of America announced that it was retiring the Countrywide name and that the combined operations of Countrywide and Bank of America would do business as Bank of America Home Loans.  Many former Countrywide locations, employees, assets, and business operations now continue under the Bank of America Home Loans name.  Upon information and belief, Bank of America Home Loans is a brand name that Bank of America now uses for the Countrywide Financial Corporation mortgage origination and

securitization operations that Bank of America has absorbed and consolidated with its own operations. The Form 10-K that Bank of America filed on February 26, 2010 lists Depositor/Issuer Defendants CWALT, Inc. and CWMBS, Inc., Underwriter Defendant Countrywide Securities Corporation, Sponsor Defendant Countrywide Home Loans, Inc. and Controlling Person Defendant Countrywide Financial Corporation as Bank of America subsidiaries.

142.    Bank of America entered into the Countrywide merger with full knowledge that it was assuming substantial Countrywide liabilities. In a February 22, 2008 interview, Bank of America spokesman Scott Silvestri told Corporate Counsel that Bank of America had not overlooked Countrywide's legal expenses and liabilities when it decided to merge with Countrywide:

> Handling all this litigation won't be cheap, even for Bank of America, the soon-to-be largest mortgage lender in the country. Nevertheless, the banking giant says that Countrywide's legal expenses were not overlooked during negotiations. "We bought the company and all of its assets and liabilities," spokesman Scott Silvestri says. "We are aware of the claims and potential claims against the company and have factored these into the purchase."

143.    A January 23, 2008 *New York Times* article similarly quotes former Bank of America Chairman and CEO Kenneth D. Lewis acknowledging that Bank of America had thought long and hard about acquiring Countrywide's liabilities:

> We did extensive due diligence. We had 60 people inside the company for almost a month. It was the most extensive due diligence we have ever done. So we feel comfortable with the valuation. We looked at every aspect of the deal, from their assets to potential lawsuits and we think we have a price that is a good price.

144.    On November 16, 2010, Bank of America's Chief Executive Officer, Brian Moynihan, publicly admitted that Bank of America had accepted liability for investors' claims concerning Countrywide's mortgage-backed securities: "There's a lot of people out there with a

lot of thoughts about how we should solve this [investor demands for refunds over faulty mortgages], but at the end of the day, we'll pay for the things that Countrywide did."

145.    And in a December 11, 2010 *New York Times* profile, Moynihan again publicly admitted that Bank of America would be responsible for Countrywide's liabilities:

> But what about Countrywide?
>
> "A decision was made; I wasn't running the company," Mr. Moynihan says, although he was obviously a top bank official at the time. "Our company bought it and we'll stand up; we'll clean it up."

The profile then noted that Bank of America's securities filings echoed the position taken by Moynihan that Bank of America would be responsible for Countrywide's liabilities:

> In addition to significantly increased revenues due to Countrywide's contributions, Bank of America has reported its payment on claims for defective legacy Countrywide mortgages and announced a $4.4 billion reserve fund to pay for similar claims in the future.

146.    In October 2008, Bank of America agreed to pay $8.4 billion to settle predatory lending lawsuits that various state attorneys general had filed against Countrywide. Although Countrywide originated the mortgages and was alleged to have committed the misconduct in question long before Bank of America's acquisition, Bank of America assumed financial responsibility for the settlement.

147.    On January 3, 2011, Bank of America similarly announced that it had agreed to pay $2.8 billion to settle claims to repurchase mortgage loans that Fannie Mae and Freddie Mac had purchased from Countrywide Financial or its subsidiaries. In its press releases and presentation concerning the settlement, Bank of America admitted that it was paying to resolve claims concerning "alleged breaches of selling representations and warranties related to loans sold by legacy Countrywide."

41

148.    Bank of America has completed actual and de facto mergers with Controlling Person Defendant Countrywide Financial Corporation and its subsidiaries, including Underwriter Defendant Countrywide Securities, and has absorbed Countrywide Financial and those entities controlled by it into Bank of America's own operations.  Bank of America Corporation is the successor in liability to Countrywide Financial Corporation and its subsidiaries, including CWALT, Inc.; CWMBS, Inc.; Countrywide Securities Corporation; and Countrywide Home Loans, Inc., and is jointly and severally or otherwise vicariously liable for the misstatements, omissions, and other wrongful conduct of these Defendants.  Accordingly, the Bank seeks to recover any damages it is awarded against Countrywide Financial Corporation and Countrywide Securities Corporation from Bank of America.

### 2.    Successor Defendant Bank of America Corporation (Merrill Lynch)

149.    On January 1, 2009, Successor Defendant Bank of America Corporation, through a wholly owned subsidiary formed solely for the purpose of the merger, acquired Merrill Lynch & Co., Inc. and those it controlled, including Merrill Lynch Mortgage Investors, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; and Merrill Lynch Mortgage Lending, Inc.  In this transaction, Merrill Lynch & Co., Inc. merged with and into Bank of America Corporation, and Bank of America Corporation acquired substantially all Merrill Lynch & Co., Inc. assets and responsibility for all pre-merger liabilities.  *See* Agreement and Plan of Merger by and between Merrill Lynch & Co., Inc. and Bank of America Corporation dated as of September 15, 2008; *see also* Bank of America Proxy Statement, Schedule 14A (describing the terms of the "strategic business combination").

150.    Bank of America has completed actual and de facto mergers with Seller and Controlling Person Defendant Merrill Lynch & Co., Inc. and its subsidiaries, including Depositor/Issuer Defendant Merrill Lynch Mortgage Investors, Inc., Underwriter and Successor

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Sponsor Defendant Merrill Lynch Mortgage Lending, Inc. by absorbing Merrill Lynch & Co., Inc. and those entities controlled by it into Bank of America's own operations. Bank of America Corporation is the successor in liability to Merrill Lynch Mortgage Investors, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Merrill Lynch Mortgage Lending, Inc.; and Merrill Lynch & Co., Inc., and is jointly and severally or otherwise vicariously liable for the misstatements, omissions, and other wrongful conduct of these Defendants. Accordingly, the Bank seeks to recover any damages it is awarded against Merrill Lynch Mortgage Investors, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch Mortgage Lending, Inc., and Merrill Lynch & Co., Inc. from Bank of America.

   3.   **Successor Defendant Capital One Financial Corporation and Capital One, National Association (Chevy Chase)**

   151.   On December 3, 2008, Successor Defendant Capital One Financial Corporation, a Delaware corporation, entered into an agreement to acquire B.F. Saul Real Estate Investment Trust, a Maryland real estate investment trust, Derwood Investment Corporation, a Maryland corporation, and the B.F. Saul Company Employees' Profit Sharing and Retirement Trust and those they controlled, in particular Sponsor and originator Chevy Chase F.S.B. and its subsidiary Depositor/Issuer Defendant Chevy Chase Funding LLC, through a stock and cash transaction. The acquisition became effective February 27, 2009.

   152.   In its December 4, 2008 announcement of the transaction, Capital One Financial Corporation touted the benefits of the agreement, including the receipt of more than $11 billion in deposits, which helped it ride out the financial crisis:

   > With the addition of Chevy Chase's $11 billion in deposits, Capital One—the largest retail depository institution headquartered in the Washington D.C. region—will also have the largest branch and ATM network in the area.

. . . .

. . . Capital One expects this transaction will be accretive to operating EPS in 2009 and accretive to GAAP EPS in 2010 . . .

. . . .

"Chevy Chase is a great strategic fit for Capital One and the combination of our two banks is economically compelling.  Chevy Chase provides an opportunity to acquire a well-run retail bank with local scale in one of the best local banking markets in the U.S.  This transaction will enhance our strong deposit base, providing us with greater scope and scale in key Mid-Atlantic banking markets," said Richard D. Fairbank, Chairman and Chief Executive Officer of Capital One.  "At a time when core funding is key, we see our deposit strength as an important element of our continued success.  The integration of Chevy Chase and the continued growth of our banking businesses is our highest priority."

153.    Capital One also announced that, as part of the transaction, Capital One would be taking a net credit mark of $1.75 billion for potential losses in Chevy Chase's loan portfolio. Ultimately, the adjustment exceeded the initial estimate: "the Company recorded net expected principal losses of approximately $2.2 billion as a component of the fair value adjustment for which actual losses will be applied." 2009 Form 10-K at 30.

154.    Following the acquisition, on July 30, 2009, Chevy Chase Bank F.S.B. was merged with and into one of Capital One Financial Corporation's "principal" subsidiaries, Capital One, National Association.  By reason of the merger, Capital One Financial Corporation and Capital One National Association obtained substantially all Chevy Chase Bank F.S.B. assets and are responsible for the pre-merger liabilities of Chevy Chase Bank F.S.B.  *See, e.g.*, Stock Purchase Agreement by and among Capital One Financial Corporation, B.F. Saul Real Estate Investment Trust, Derwood Investment Corporation, and B.F. Saul Company Employees' Profit Sharing and Retirement Trust, dated as of December 3, 2008; Capital One Financial Corporation 2009 Annual Report; Capital One Financial Corporation 2009 Form 10-K.

155.    Capital One, North America, as the surviving entity, retained as operating,

financial and statutory subsidiaries a number of entities that were owned by Chevy Chase Bank

F.S.B. before the merger, including Chevy Chase Funding LLC.  *See, e.g.,* Letter from

Comptroller of the Currency Administrator of National Banks, dated July 14, 2009, granting

conditional approval to the conversion and merger applications of Chevy Chase Bank and

Capital One, National Association.

156.    Capital One promptly integrated the business and operations of Chevy Chase

Bank F.S.B. and its subsidiaries, including Chevy Chase Funding LLC.  For instance, in Capital

One Financial Corporation's 2009 Annual Report, investors were advised:

> During the third quarter of 2009, the Company realigned its business
> segment reporting structure to better reflect the manner in which the performance
> of the Company's operations is evaluated.
>
> . . . .
>
> The segment reorganization includes the allocation of Chevy Chase Bank
> to the appropriate segments.

*See also* Capital One 2010 Annual Report at 5 ("We converted Chevy Chase Bank to the Capital

One brand in 2010."); 2010 Form 10-K at 1 ("In September 2010, we rebranded Chevy Chase

Bank, F.S.B. ("Chevy Chase Bank"), strengthening the Capital One brand in the Washington,

D.C. region.").

157.    Following the acquisition, visitors to Chevy Chase's website have been are

automatically redirected to the Capital One website, and have been told that Chevy Chase Bank

is "a division of Capital One, N.A." and that "[t]he Chevy Chase Bank site is no longer available.

Please bookmark www.capitalonebank.com for future reference.  You will be redirected to

capitalonebank.com momentarily."

158.    In March 18, 2010 proxy statement to shareholders, Capital One Financial

Corporation noted that it was "[c]ontinuing to integrate Chevy Chase Bank to build a scalable

bank infrastructure to ensure that the Company is well-positioned to take advantage of

opportunities to grow its consumer and commercial banking businesses."

159.    Capital One Financial Corporation further touted the benefits of the transaction in

its 2009 10-K and confirmed that it had incorporated Chevy Chase Bank's financials into its

own: "This acquisition improves the Company's core deposit funding base, increases readily

available and committed liquidity, adds additional scale in bank operations, and brings a strong

customer base in an attractive banking market. Chevy Chase Bank's results of operations are

included in the Company's results after the acquisition date of February 27, 2009."

160.    Capital One Financial Corporation and Capital One, National Association entered

into this transaction with full knowledge that it was assuming substantial Chevy Chase liabilities.

In fact, Capital One Financial Corporation, in its 2009 Annual Report, referred to Capital One,

National Association as the "successor" to Chevy Chase Bank F.S.B., and has taken steps to

expressly and impliedly assume Chevy Chase Bank's liabilities, advising investors that "[w]e

have established a reserve in the consolidated financial statements for potential losses that are

that are considered to be both probable and reasonably estimable related to the mortgage loans

sold by our originating subsidiaries," including Chevy Chase Bank.  Indeed, in its 2009 Form 10-

K, Capital One Financial Corporation disclosed that Capital One, National Association, "as

successor to Chevy Chase Bank," may be liable to investors who purchased securitized Chevy

Chase loans, "in the event that there was improper underwriting or fraud, or in the event that the

loans become delinquent shortly after they are originated."  Capital One Financial Corporation

further disclosed:

[W]e may be exposed to credit risk associated with sold loans. We have established a reserve in the consolidated financial statements for potential losses that are considered to be both probable and reasonably estimable related to the mortgage loans sold by our originating subsidiaries. The adequacy of the reserve and the ultimate amount of losses incurred will depend on, among other things, the actual future mortgage loan performance, the actual level of future repurchase and indemnification requests, the actual success rate of claimants, developments in Company and industry litigation, actual recoveries on the collateral, and macroeconomic conditions (including unemployment levels and housing prices). Due to uncertainties relating to these factors, we cannot reasonably estimate the total amount of losses that will actually be incurred as a result of our subsidiaries' repurchase and indemnification obligations, and there can be no assurance that our reserves will be adequate or that the total amount of losses incurred will not have a material adverse effect upon the Company's financial condition or results of operations. For additional information related to the Company's mortgage loan operations, mortgage loan repurchase and indemnification obligations and related reserves, see Item 7 "Management Discussion and Analysis of Financial Conditions and Results of Operations – Valuation of Representation and Warranty Reserve"

161.     In its 2009 10-K, Capital One Financial Corporation described the accounting treatment of the transaction, including assumption of liabilities, as follows:

The Chevy Chase Bank acquisition is being accounted for under the acquisition method of accounting following the provisions of ASC 805-10/SFAS No. 141(R). . . . ASC 805-10/SFAS No. 141(R) requires an acquirer to recognize the assets acquired, the liabilities assumed, and any noncontrolling interest in the acquiree at the acquisition date, at their fair values as of that date, with limited exceptions, thereby replacing SFAS 141's cost-allocation process. This Statement also changes the requirements for recognizing acquisition related costs, restructuring costs, and assets acquired and liabilities assumed arising from contingencies.

Accordingly, the purchase price was allocated to the acquired assets and liabilities based on their estimated fair values at the Chevy Chase Bank acquisition date, as summarized in the table below. Initial goodwill of $1.1 billion was calculated as the purchase premium after adjusting for the fair value of net assets acquired. Throughout 2009, the Company continued the analysis of the fair values and purchase price allocation of Chevy Chase Bank's assets and liabilities which resulting in purchase accounting adjustments and an increase to goodwill of $510.9 million. Goodwill of $1.6 billion represents the value expected from the synergies created through the scale, operational and product enhancement benefits that will result from combining the operations of the two companies. The change was predominantly related to a reduction in the fair value of net loans at the acquisition date. As of December 31, 2009, the Company has completed the analysis and considers purchase accounting to be final and the Company has

recast previously presented information as if all adjustments to the purchase price allocation had occurred at the date of acquisition.

162. Capital One Financial Corporation and Capital One, National Association have completed de facto and actual mergers with Controlling Person Chevy Chase F.S.B. and its subsidiaries, including Depositor/Issuer Defendant Chevy Chase Funding LLC, by absorbing Chevy Chase F.S.B. and those entities controlled by it into Capital One Financial Corporation and Capital One, National Association's own operations. Capital One Financial Corporation and Capital One, National Association are the successors in liability to Chevy Chase F.S.B. and its subsidiaries, including Depositor/Issuer Defendant Chevy Chase Funding LLC, and is jointly and severally or otherwise vicariously liable for the misstatements, omissions, and other wrongful conduct of these Defendants and entities alleged herein, including the liability with respect to the Certificates. Accordingly, the Bank seeks to recover any damages it is awarded against Chevy Chase F.S.B. and its subsidiaries, including Depositor/Issuer Defendant Chevy Chase Funding LLC, from Capital One Financial Corporation and Capital One, National Association.

**4. Successor Defendant DB Structured Products, Inc. (MortgageIT Holdings)**

163. On or about July 11, 2006, Controlling Person MortgageIT Holdings, Inc. was acquired by and merged with and into Successor Defendant DB Structured Products, Inc. through a wholly owned subsidiary formed solely for the purpose of the merger. DB Structured Products, Inc. acquired MortgageIT Holdings, Inc. and its wholly owned subsidiaries, MortgageIT, Inc. and MortgageIT Securities Corp. In this transaction, DB Structured Products, Inc. acquired substantially all of the assets and responsibility for all pre-merger liabilities of MortgageIT Holdings, Inc. and its subsidiaries. *See* Agreement and Plan of Reorganization Dated as of July 11, 2006 among DB Structured Products, Inc., Titan Holdings Corp., Titan Acquisition Corp., and MortgageIT Holdings, Inc.

164.    In its July 12, 2006 announcement of the transaction, Deutsche Bank AG, the

parent of DB Structured Products, Inc., stressed the financial and operational benefits of the

agreement, such as the loan origination capacities of MortgageIT, Inc., which originated $29.2

billion in loans in 2005.  DB Structured Products, Inc. promptly integrated the operations of

MortgageIT, Inc. into its Residential Mortgage Backed Securities business, part of its Corporate

Banking and Securities line of business:

> This acquisition is expected to be earnings accretive in 2007 and will add
> significant platform scale and synergies to Deutsche Bank's existing US
> residential mortgage franchise. It is a key element of the Bank's build-out of a
> vertically integrated mortgage origination and securitization platform.
>
> . . . .
>
> . . . In 2005, MortgageIT grew its loan originations approximately 124%
> over 2004, to $29.2 billion, and is one of the fastest-growing and largest
> residential mortgage loan originators in the US.
>
> . . . .
>
> Upon closing, the operating company, MortgageIT, Inc., will become a
> part of Deutsche Bank's Residential Mortgage Backed Securities (RMBS)
> business, which is based in New York. Deutsche Bank's acquisition of
> MortgageIT is the latest in a series of steps taken to significantly increase its
> presence in the US mortgage markets.

165.    Anshu Jain, head of Global Markets for Deutsche Bank, expressed confidence in

that press release that "[t]he MortgageIT team ha[d] built an outstanding business." He stated:

"[W]e are extremely pleased to have them join our effort as we continue to expand our mortgage

securitization platform in the US and globally."

166.    The acquisition and incorporation of the lending practices of MortgageIT

represented a significant risk.  In Deutsche Bank's Form 6-K filed on April 3, 2008, Deutsche

Bank disclosed that, as of December 2007, it had taken on $12.67 billion worth of exposure in its

residential mortgage-backed security business—and that this exposure was primarily due to the

acquisition of MortgageIT.  Deutsche Bank thereafter announced that it was closing the retail operations and scaling down the wholesale operations of MortgageIT, and on December 11, 2008, Deutsche Bank issued a statement announcing the closure of MortgageIT's remaining wholesale lending operations.

167.    DB Structured Products Inc. has completed actual and de facto mergers with Mortgage IT Holdings, Inc. and its subsidiaries, including Sponsor and Controlling Person Defendant MortgageIT, Inc. and Depositor/Issuer Defendant MortgageIT Securities Corp., by absorbing MortgageIT Holdings, Inc. and those entities controlled by it, including MortgageIT, Inc. and MortgageIT Securities Corp. into the operations of DB Structured Products, Inc.  DB Structured Products, Inc. is the successor in liability to MortgageIT Holdings, Inc. and its subsidiaries, including MortgageIT, Inc. and MortgageIT Securities Corp., and is jointly and severally or otherwise vicariously liable for the misstatements, omissions, and other wrongful conduct of these Defendants and entities.  Accordingly, the Bank seeks to recover any damages it is awarded against Mortgage IT Holdings, Inc. and its subsidiaries, including MortgageIT, Inc. and MortgageIT Securities Corp., from DB Structured Products, Inc.

### 5.  Successor Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated (Banc of America Securities LLC).

168.    As noted in § IV.B, *supra*, effective November 1, 2010, Banc of America Securities LLC merged with and into Successor Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated, a Delaware corporation.  All references herein to Banc of America Securities LLC are also to Merrill Lynch, Pierce, Fenner & Smith Incorporated, which is liable as a matter of law as successor to Banc of America Securities LLC by virtue of its status as the surviving entity in its merger with Banc of America Securities LLC.

6. **Successor Defendant Morgan Stanley Mortgage Capital Holdings LLC (Morgan Stanley Mortgage Capital Inc.).**

169.    As noted in § IV.B, *supra*, effective June 17, 2007, Morgan Stanley Mortgage Capital Inc. merged with and into Successor Defendant Morgan Stanley Mortgage Capital Holdings LLC, a New York limited liability company that is registered to do business in Massachusetts.  Since the merger, Morgan Stanley Mortgage Capital Holdings LLC has continued the business of Morgan Stanley Mortgage Capital Inc.  All references herein to Morgan Stanley Mortgage Capital Inc. are also to Morgan Stanley Mortgage Capital Holdings LLC, which is liable as a matter of law as successor to Morgan Stanley Mortgage Capital Inc. by virtue of its status as the surviving entity in its merger with Morgan Stanley Mortgage Capital Inc.

**D.    The John Doe Defendants**

170.    Defendants John Doe 1-50 are other Depositor/Issuers, Underwriters, and/or others who are jointly and severally or otherwise liable for the misstatements, omissions, and other wrongful conduct alleged herein, including the liability with respect to the Certificates. The John Doe Defendants may include persons or entities that are not named as defendants at this time because Plaintiff has insufficient information as to the extent, if any, of their involvement in and liability for the matters alleged herein.  Plaintiff will amend this Complaint to allege the true names and capacities of these defendants when ascertained.

**E.    Summary Charts of Defendants and Certificates**

171.    Summary Charts of the Defendants, and the Certificates with which they are associated, are included in Appendices XI through XVII.

## V.   FACTUAL BACKGROUND

A.     **The Creation of Mortgage-Backed Securities.**

1.     **The Securitization Process**

172.    The PLMBS purchased by the Bank were created in a process known as "mortgage securitization."  Mortgage securitization is an end-to-end process by which mortgage loans are acquired from "mortgage originators," pooled together, and securities constituting interests in the cash flow from the mortgage pools are then sold to investors.  The securities are referred to as "mortgage pass-through certificates" because the cash flow from the pool of mortgages is "passed through" to the certificate holders when payments are made by the underlying mortgage borrowers.

173.    The following graphic illustrates the securitization process:



174.    Securitization involves several entities who perform distinct tasks, though, as was the case here, many or all of the entities in a securitization may be subsidiaries or affiliates of a single parent or holding company.

175.    The first step in creating a mortgage pass-through security such as the PLMBS purchased by the Bank is the acquisition by a "**Depositor**" or "**Depositor/Issuer**" of an

inventory of loans from a **"Sponsor"** or **"Seller"** which organizes and initiates these PLMBS

transactions by acquiring the loans from its own origination unit or from other mortgage

originators in exchange for cash, and participates in marketing and selling the securities to

investors, including the Bank. The Depositor/Issuer is often a subsidiary or other affiliate of the

Sponsor, and indeed, each Depositor/Issuer Defendant named herein was an affiliate of the

Sponsor, and often also of at least one originator of mortgage loans underlying that security. *See*

*infra* § V.D.1. Plaintiff believes and alleges that each Depositor/Issuer named herein was formed

and exists solely for the purpose of receiving and depositing loans into trusts for PLMBS

securitization.

176.    The Depositor then securitizes the pool of loans by forming one or more mortgage

pools with the inventory of loans, and creating tranches of interests in the mortgage pools with

various levels of seniority. Interests in these tranches are then issued by the Depositor (who then

serves as the Issuer) through a trust in the form of bonds, or Certificates. The Depositor/Issuer

Defendants, which securitized these PLMBS, were the "issuers" of the securities.[7]

177.    Each tranche has a different level of purported risk and reward, and, often, a

different rating. The most senior tranches typically receive the highest investment-grade rating,

triple A. Junior tranches, which usually have lower ratings, are more exposed to risk, but offer

higher potential returns. The most senior tranches of Certificates often are retired faster than the

more junior, or subordinate, tranches, by redirecting all or part of the collateral's principal

repayments from junior tranches up to the senior tranches. Conversely, losses on the underlying

loans in the asset pool—whether due to default, delinquency, or otherwise—are allocated first to

---

[7] *See* 17 C.F.R. § 230.191 ("The depositor for the asset-backed securities acting solely in its
capacity as depositor to the issuing entity is the issuer for purposes of the asset-backed
securities of that issuing entity.").

the most subordinate or junior tranche of Certificate, then to the tranche above that.  This hierarchy in the division of cash flows is referred to as the "flow of funds" or "waterfall."

178.    The Depositor/Issuer and/or Sponsor worked with one or more of the nationally-recognized credit rating agencies—here, one or more of the Rating Agency Defendants—to ensure that each tranche of the Certificate received the rating desired by the Securities Defendants.  For PLMBS, this meant a triple-A rating for the senior tranche, and lower ratings for the subordinated tranches.  Triple-A ratings are provided where the credit rating agency purports to determine that the tranche has the necessary level of credit support.  Once the asset pool is securitized, the Certificates are placed with one or more "**Underwriters**" who resell them to investors, such as the Bank.

179.    The following diagram identifies in basic terms the entities involved in the creation and sale of PLMBS:



**2.      Defendants' Access to Loan Files and Due Diligence Obligations.**

180.     Because the cash flow from the loans in the mortgage pool of a securitization is the source of funds to pay the holders of the Certificates issued by the trust, the credit quality of