# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FEDERAL HOME LOAN BANK OF BOSTON,

                Plaintiff,

                v.

ALLY FINANCIAL, INC. F/K/A GMAC LLC, *et al.*,

                Defendants.

Civil Action No. 1:11-cv-10952-GAO

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENLARGE DEPOSITION TIME TO PERMIT FAIR EXAMINATION OF PLAINTIFF'S CREDIT ANALYSTS FOR THE RELEVANT CERTIFICATES

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

     A.     FHLB Boston's Claims Against the Six Remaining Defendant Groups
           Relate to 36 Individual Purchases of 36 Different RMBS Certificates Over
           a Three Year Period ...........................................................................................3

     B.     The Credit Analysis of the Relevant Certificates ....................................................4

     C.     The Parties' Discussions of Deposition Length and FHLB Boston's
           Refusal to Permit Time for a Fair Examination......................................................7

ARGUMENT ....................................................................................................................10

I.     The Applicable Legal Standard ...........................................................................10

II.     Fair Examination of the Credit Analysts Will Require Two-Day Depositions ................11

III.     The Conditions That FHLB Boston Seeks to Impose on the Granting of Some
       Additional Time Are Neither Practicable Nor Proper .......................................................13

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Baker v. PPL Corp.*, No. 1:09-CV-428, 2011 WL 1811106 (M.D. Pa. May 12, 2011) ............... 13

*Haldeman v. Golden*,
   No. 05-00810 DAE-KSC, 2007 U.S. Dist LEXIS 81410 (D. Haw. Nov. 1, 2007) ................ 13

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   No. 05–1717, 2008 WL 5377979 (D. Del. Dec. 18, 2008) ...................................................... 13

*Malec v. Trustees of Boston College,*  208 F.R.D. 23 (D. Mass. 2002) ........................................ 13

*Marshall v. GE Marshall, Inc.*,
   No. 2:09 CV 198, 2012 WL 405714 (N.D. Ind. Feb. 8, 2012) .................................................. 12

*McBride v. Medicalodges, Inc.*,
   No. 06-2535-JWL-GLR, 2008 WL 1774674 (D. Kan. Apr. 16, 2008) .................................. 12

STATUTES & RULES

Chapter 93A of the Massachusetts General Laws .......................................................................... 3

Fed. R. Civ. P. 26(b) .................................................................................................................... 10

Fed. R. Civ. P. 30(d) ............................................................................................................ 10-11, 14

D. Mass. Local Rule 26.1(c) ...................................................................................................... 9, 14

Section 410(a)(2) of the Massachusetts Uniform Securities Act .................................................... 3

Section 410(b) of the Massachusetts Uniform Securities Act  ....................................................... 3

## INTRODUCTION

Defendants respectfully submit this memorandum of law in support of their motion to permit two-day depositions for three current or former employees of Plaintiff Federal Home Loan Bank of Boston ("FHLB Boston" or the "Bank"):  two credit research analysts (Anna Kumysh and Mark Cogan) and the Bank's credit research manager (William DiFulvio).

Two seven-hour days are necessary for the six remaining unaffiliated defendant groups[1] to conduct a fair examination of these three individuals.   Each of the three was integrally involved with and has individualized knowledge of the Bank's analysis of the 36 residential mortgage-backed securities ("RMBS") that remain at issue in this case (the "Relevant Certificates").  The Bank has sued the Defendants on different collections of Relevant Certificates, and those Defendants are represented by different counsel and have distinct interests.  Although Defendants will seek to be as efficient as possible and coordinate on common questioning to the extent feasible, different Defendants' counsel will need the opportunity to examine these critical witnesses on their knowledge of the Bank's credit and purchase decisions concerning the specific certificates at issue for those Defendants and on other defendant-specific issues.  This should not be a controversial request: Two, three, and even four-day depositions for witnesses like these have been commonplace in other multi-defendant RMBS cases across the country.  In fact, Defendants are aware of no other such case involving a

---

[1] The six remaining defendant groups are: (1) Credit Suisse (Credit Suisse (USA), Inc.; Credit Suisse First Boston Mortgage Securities Corp.; Credit Suisse Holdings (USA), Inc.; Credit Suisse Securities (USA) LLC; DLJ Mortgage Capital, Inc.) (2) Impac (IMH Assets Corp.; IMPAC Funding Corporation; IMPAC Mortgage Holdings, Inc.; IMPAC Secured Assets Corp.); (3) Morgan Stanley (Morgan Stanley & Co. Inc.; Morgan Stanley Capital I Inc.; Morgan Stanley Mortgage Capital Holdings LLC); (4) Nomura (Nomura Asset Acceptance Corporation; Nomura Credit & Capital, Inc.; Nomura Holding America, Inc.; Nomura Securities International, Inc. ); (5) RBS (RBS Acceptance Inc. f/k/a Greenwich Capital Acceptance, Inc.; RBS Financial Products Inc. f/k/a Greenwich Capital Financial Products, Inc.; RBS Holdings USA Inc. f/k/a Greenwich Capital Holdings, Inc.; RBS Securities Inc. f/k/a Greenwich Capital Markets, Inc.; and (6) UBS (UBS Americas Inc.; UBS Real Estate Securities Inc.; UBS Securities LLC; Mortgage Asset Securitization Transactions, Inc.).  For purposes of this memorandum, we refer to each such defendant group as a "Defendant."

comparable number of defendants that completed fact discovery without a plaintiff making at least some witnesses available for two (or more) full deposition days.

The Bank no longer seriously contends that a single deposition day is sufficient for these witnesses.  Although the Bank initially refused to budge on the seven-hour limit, it has more recently offered to make each of these witnesses available for twelve hours of deposition time.  But the Bank has sought to yoke any agreement on length of these depositions to the Bank's demand that Defendants accept an unrelated and unsupported one-size-fits-all expansion of the number of depositions it may take of Defendants' witnesses.  Specifically, FHLB Boston has demanded that Defendants consent wholesale to <u>forty</u> depositions of Defendants' witnesses—a four-fold increase over the ten-deposition limit set forth in the rules—even though the Bank has already received deposition transcripts for the vast majority of the same witnesses in document discovery.  Defendants have always made clear that they are prepared to discuss any warranted enlargement of the ten-deposition limit if FHLB Boston can establish good cause by reference to specific Defendants and witnesses; indeed, at the Bank's suggestion, each Defendant has been in ongoing individual discussions with FHLB Boston about individual defense witnesses.  But the Bank has never tried to justify—nor could it—the extravagant and one-size-fits-all expansion of the scope of deposition discovery it now demands in exchange for its agreement to permit two-day depositions of just three of its witnesses at the core of this case for the various Defendants.  FHLB Boston should not be permitted to side-step its burden to show good cause and thereby multiply unnecessarily the number of costly and time-consuming depositions in this case.  Because the Defendants <u>have</u> made witness-specific showings of good cause for these three Bank witnesses, these witnesses should be required to sit for two full deposition days, with no unrelated, costly, and inappropriate strings attached.

Defendants do not approach the Court on this issue lightly.  In the weeks during which the parties have met and conferred, Defendants have compromised on other points and agreed to accommodate the Bank's witnesses on scheduling, including, for example, by offering to proceed with two-day depositions on non-consecutive days convenient for these witnesses.  And Defendants will <u>not</u> seek two full deposition days for a number of the Bank's other witnesses.[2]  But the parties are at an impasse as to these three key witnesses with a discovery cut-off fast approaching, and Defendants cannot agree to forego time necessary to conduct a fair examination of them and are not prepared to accept the Bank's unrelated and unsupported demand for a four-fold increase in the number of depositions of Defendants' witnesses.

## BACKGROUND

**A.**    <u>FHLB Boston's Claims Against the Six Remaining Defendant Groups Relate to 36 Individual Purchases of 36 Different RMBS Certificates Over a Three Year Period</u>

The Bank initiated this lawsuit by filing a single complaint against 80 entities, related to 120 certificates, and seeking over $5.7 billion in damages.  In its amended complaint filed on June 29, 2012, FHLB Boston asserted statutory claims against Defendants under Sections 410(a)(2) and 410(b) of the Massachusetts Uniform Securities Act ("MUSA") and Chapter 93A of the Massachusetts General Laws, as well as a common-law claim of negligent misrepresentation. Amended Complaint for Rescission and Damages, dated June 29, 2012 (dkt. # 180) ("Am. Compl.") ¶¶ 941-980, 1022-1031.  The Bank alleges that offering documents for

---

[2] Although the instant motion seeks to enlarge the deposition time only for these three credit analysts, Defendants have informed FHLB Boston that they intend to notice additional depositions of Bank witnesses soon. Defendants anticipate being able to examine a number of these other witnesses using no more than a single seven-hour day each, but believe based on the existing discovery record that certain of the additional witnesses have individualized knowledge of the Relevant Certificates necessitating depositions of two days or more.  Defendants make this motion now, focused only on these three witnesses, in light of the dwindling time left in the discovery period and with the hope that guidance from the Court on this motion will avoid the need for motion practice concerning the depositions of any other Bank witnesses.

the Relevant Certificates (and myriad other certificates no longer at issue) contained untrue statements of material fact and omitted material facts necessary to make the offering documents not misleading, with respect to seven different categories of information.[3]

Although the Bank's allegations purport to concern similar categories of alleged misstatements or omissions across Defendants, see Am. Compl. ¶¶ 811-37, 840-47, 864-99, 903, 908-18, 920-31, they relate to specific, individual purchases by the Bank of 36 different RMBS (*see* Appendix A) over an approximately three-year period.  Each Relevant Certificate was described in its own lengthy Prospectus Supplement, containing different statements about different collections of mortgage loans, with different characteristics, made by different loan originators.  The six unaffiliated Defendant groups that remain are represented in this case by their own counsel.  Each Defendant group was involved in the offering or sale of a different group of Relevant Certificates.

**B.**     **The Credit Analysis of the Relevant Certificates**

> 1.     *The Bank's Credit Department*

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

██████████████ *See, e.g.*, Ex. B at FHLBBOSTON_00012121 ████████████

████████████████████████████████████████████

---

[3] These include originators' compliance with underwriting guidelines, loan-to-value ("LTV") ratios (and appraisals from which they are derived), state unfair lending guidelines, due diligence, loan transfer and assignment, and compound risks. Am. Compl. ¶¶ 811-37, 840-47, 864-90, 903, 908-18, 920-31.  The Bank also asserts that the ratings assigned to those certificates were misleading. *Id.* ¶¶ 891-99.



see, e.g., Ex. C at FHLBBOSTON_00044283-84—

2.    *The Credit Analysts' Individualized Knowledge of Relevant Certificates*

The three witnesses at issue on Defendants' motion—William DiFulvio, Anna Kumysh, and Mark Cogan (collectively, the "Credit Analysts")—were the Bank employees most involved with the Credit Department's individualized analysis of the Relevant Certificates, both before and after the Bank's purchases.  In particular:



---

[4] *See, e.g.*, Declaration of Edmund Polubinski III, dated September 29, 2016 ("Polubinski Decl."), Ex. A at FHLBBOSTON_00989416 ▮▮▮▮▮▮▮▮ "Ex. __" refers to an exhibit to the Polubinski Declaration.

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which is Exhibit G to the Polubinski Declaration.

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Relevant Certificates purchased by the Bank each were private-label mortgage backed securities (PLMBS), i.e., non-agency RMBS.

5



*See, e.g.*, Ex. C at FHLBBOSTON_00044283-84.

*See, e.g., id.* at FHLBBOSTON_00044280.

*See, e.g.*, Ex. D at FHLBBOSTON_01180716.

*see* Ex. C at FHLBBOSTON_00044280,

*See, e.g.*, Ex. E at FHLBBOSTON_00042369;

[7] *See, e.g.*, Ex. F at FHLBBOSTON_01399419-20

[8]

████████████████████████████████████████████████

███████████████████████████████

**C.** **The Parties' Discussions of Deposition Length and FHLB Boston's Refusal to Permit Time for a Fair Examination**

On August 16, 2016, Defendants informed the Bank's counsel of their intention to notice the Credit Analysts for depositions in September 2016, and asked whether the Bank's counsel would be representing them. *See* Ex. H.[9]  On August 25, 2016, the Bank's counsel confirmed that it would be representing the Credit Analysts for their depositions, and agreed to confirm their availability for depositions in September. *See id.*

Defendants heard nothing further from the Bank for more than a week and, on September 7, 2016, Defendants emailed the Bank to follow up on dates for two-day depositions of the Credit Analysts in September or the first week of October. *See id.*  The Bank replied that it would make these witnesses available only for a single seven-hour deposition day and offered a single date in September or October for each witness. *See id.*

Defendants emailed the Bank the following day, September 8, that a single seven-hour day would be insufficient, explaining that two-day depositions would be necessary for a fair examination of the Credit Analysts, in light of, among other things, these witnesses' roles and the nature of the claims pending against the six remaining Defendant groups.  Counsel for the Bank was unavailable to meet and confer until September 15,[10] at which time they simply reiterated

---

[9] Defendants also identified at this time a fourth witness, Russell Blake, who was the Bank's assistant portfolio manager during the 2005 to 2007 timeframe. ████████████████████████████████████████████  █████████████████████████████████████  Defendants have informed the Bank that they presently anticipate being able to conduct their examination of Mr. Blake in a single eight-hour day, and the Bank has agreed to produce Mr. Blake for eight hours.  Mr. Blake's deposition is scheduled for October 6.

[10] Defendants had proposed to discuss deposition limitations for the Credit Analysts on a meet and confer call already calendared for September 9 in the hopes of reaching a quick resolution to permit the scheduling of depositions in light of the fast-approaching December 1 fact discovery deadline; the Bank rejected that proposal, as well as an alternative date proposed by Defendants. *See* Ex. H.  Defendants then accepted the first date  offered by (....continued)

their position that the Bank would make the Credit Analysts available for only a single day of deposition time each.  Although the Bank suggested that the parties could discuss any request for additional time for the Credit Analysts' depositions after the end of a seven-hour deposition day, Defendants explained why this approach is unacceptable in a case involving six separately-represented Defendant groups:  No Defendant's counsel could responsibly forego questioning on the first day in hopes that the Bank would be reasonable in agreeing to permit questioning on a second day.  The Bank's counsel said it would inform Defendants following the meet and confer if the Bank would agree to additional time for any of the Credit Analysts or if the parties were at an impasse.

In a series of emails on September 15 and 16, 2016, counsel for FHLB Boston proposed to allow Mr. DiFulvio's deposition to proceed over twelve hours allocated between two non-consecutive days, but refused to make Ms. Kumysh or Mr. Cogan available for more than a single eight-hour day.  *See* Ex. I.  In emails on September 16 and 19, 2016, Defendants indicated their willingness to consider an overall 12-hour limit for Mr. DiFulvio's deposition, solely in the interest of compromise, but made clear that Defendants were not willing to agree to less than two full seven-hour days each for the depositions of Ms. Kumysh and Mr. Cogan.[11]  *See* Ex. I.

---

(continued....)

the Bank to meet and confer on this issue.  *See id.* (Email from S. Wilcox to A. Williams-Derry, dated September 9, 2016)

[11] The Bank had initially sought to condition any agreement to an enlargement of time for Mr. DiFulvio's deposition on a rigid division of questioning among Defendants, with a certain amount of time of the Bank's choosing for common questioning, and specific, identical increments of time for each Defendant's questioning. Defendants made clear that any such condition would be unsupported by applicable rules, inconsistent with deposition practice (particularly in the context of six defendant groups, each represented by separate counsel), and highly inefficient and impracticable.  *See* Ex. I (Email from  E. Polubinski III to G. Gotto, dated September 9, 2016). Defendants are differently situated and will require differing amounts of time for questioning, and witnesses' answers to questions <u>during the deposition</u> may prompt the need for more or less examination on common issues and may impact the amount of time each individual Defendant will need for its individualized questioning.  Such a division would do nothing to benefit the witness and would serve only to hamstring Defendants.  FHLB Boston appears to have acknowledged as much and ceased to press for any such advance allocation of time.

On September 20, FHLB Boston offered to extend the time for the Credit Analysts to permit a total of eleven hours for Ms. Kumysh and twelve hours for Mr. Cogan.  But for the first time, the Bank also conditioned the offer of additional time for <u>its</u> witnesses on an unrelated and unsupported condition on the number of <u>Defendants'</u> witnesses whom it could depose.  In particular, the Bank conditioned its willingness to make its witnesses available for additional time on a wholesale agreement that the Bank could take sixty depositions (ten per defendant group) of Defendant witnesses.  *See id.*  Defendants subsequently made clear that there is no connection between the appropriate length of time for three specific Bank witnesses and the aggregate number of depositions the Bank may take of defense witnesses; Defendants likewise made clear that is no basis to support the six-fold increase in number of depositions that the Bank was demanding.

Nevertheless, from September 22 to September 29, defense counsel communicated with the Bank about whether there might be a basis to reach a compromise on deposition numbers for defendant witnesses and the length of the depositions for the Credit Analysts, solely in the interest of avoiding unnecessary motion practice.  As part of these communications, Defendants offered to double the number of defense depositions from the default of ten under the applicable Local Rule 26.1(c) to twenty across Defendants (up to five per defendant group) if the Bank would permit two full days of deposition time with the Credit Analysts.  *See* Ex. J (Email from E. Polubinski III to A. Williams-Derry, dated September 29, 2016).

On September 28, FHLB Boston again refused to make the Credit Analysts available for two full days, insisting that each deposition be limited to twelve hours.  And the Bank continued to condition even that offer on obtaining an agreement that the Bank could take forty depositions

(up to ten per defendant group).  *See* Ex. J.[12]  The Bank asked that Defendants either accept this

offer or inform its counsel that the parties were at an impasse on the issue.  *See id.*

Defendants confirmed by email dated September 29 that the parties are at an impasse as

to the length of the depositions of the three Credit Analysts.  *See* Ex. J.  Although Defendants

declined to accept FHLB Boston's demand that they commit to a massive wholesale expansion

of defensive deposition discovery in exchange for additional deposition time with the three

Credit Analysts, Defendants did make clear that they look forward to continuing the  parties'

Defendant-specific discussions concerning depositions of each Defendant's witnesses—

including the appropriate number of such depositions—by reference to specific witnesses for

particular Defendants, as Plaintiff had first proposed.  *Id.*  Those discussions are ongoing.  *Id.*[13]

## ARGUMENT

### I.    The Applicable Legal Standard

"Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of

7 hours."  Fed. R. Civ. P. 30(d)(1).  However, "[t]he court must allow additional time consistent

with Rule 26(b)(1) and (2) if needed to fairly examine the deponent[.]"  *Id.*; *see also* Fed. R. Civ.

P. 30(d) advisory committee's note ("In multi-party cases, the need for each party to examine the

---

[12] FHLB Boston also included within its demand certain additional conditions, including a blanket agreement that five hours of deposition time would be appropriate for all defendant witnesses, notwithstanding the number of depositions they had previously sat for and had transcripts produced in this action, or other individual circumstances, as well as generalized conditions regarding admissibility of certain documents, including deposition transcripts and exhibits.  *See id.*  Defendants are addressing each of these issues with the Bank as part of their individual discussions concerning depositions of specific Defendant witnesses.

[13] After Defendants informed FHLB Boston that they intended to file this motion, the Bank responded with an email that purported to declare an impasse of some kind.  *Id.*  Though it is unclear from the email precisely what the Bank is referring to, insofar as the Bank seeks to suggest that the parties are at an impasse on numbers of depositions for Defendants' witnesses, it is mistaken.  The Bank's discussions with different Defendants about depositions of Defendants' witnesses are still in an early stage: Plaintiff has identified "priority" deponents for many Defendants, but not all, and only this week asked whether Defendants would be prepared to accept service of subpoenas for those on their priority lists.  Defendants, for their part, remain willing to discuss appropriate depositions on a defendant-by-defendant basis, as the parties have been doing to date.  *See id.*

witness may warrant additional time[.]").  "The party seeking a court order to extend the

examination, or otherwise alter the limitations, is expected to show good cause to justify such an

order."  Fed. R. Civ. P. 30(d) advisory committee's note.

## II.     Fair Examination of the Credit Analysts Will Require Two-Day Depositions

Given the breadth of the Credit Analysts' responsibilities and knowledge, including

knowledge specific to Certificates at issue for different Defendants, and in light of the complex

claims and voluminous discovery in this action, an enlargement of time to examine these key

witnesses is essential to permit the six unaffiliated Defendants to conduct a fair examination.  As

described above, the Credit Analysts each possess individualized knowledge about FHLB

Boston's credit analysis of each certificate, investment decisions related to individual

certificates, and other matters specific to the six Defendants.  *See supra* at 4-7.  In particular,

these three witnesses performed individualized analysis on the 36 Relevant Certificates

concerning the very issues that the Bank now claims to have been misstated.  The Credit

Analysts' testimony will likely be of central importance to the claims and defenses at issue in

this case, including the Bank's knowledge of, and justifiable reliance on, the purported

misstatements and Defendants' statute of limitations defense.  *See supra* at 3-7.  Anything less

than two full days of deposition time would be insufficient for these depositions considering

individual Defendants' need to examine these witnesses on the analyses they performed in

regards to the Relevant Certificates, as well as issues in common to Defendants.

Had Plaintiff sued the six Defendants separately—as some other such plaintiffs have

done—each Defendant would have a full seven-hour day to conduct its examination.  Defendants

here are committed to proceeding efficiently and have obviously not requested six full days of

deposition.  And they are prepared to proceed with single-day depositions for many Plaintiff

witnesses.  But two days—a third of that time—is essential for a fair examination given the wealth of individual issues these specific witnesses raise.

Numerous courts have found good cause to extend the time for depositions in cases involving complex claims and multiple parties on the side taking the deposition.  For example, in *Marshall v. GE Marshall, Inc.*, No. 2:09 CV 198, 2012 WL405714, at *1 (N.D. Ind. Feb. 8, 2012), the court permitted three full days to question the plaintiff in that case because the fact "[t]he plaintiff has raised seven counts against 12 defendants and has produced a myriad of documents in discovery" demonstrated the necessity for additional time to allow each defendant "to depose the plaintiff on each of the claims and numerous documents."  *Id.*  Similarly, in *McBride v. Medicalodges, Inc.*, No. 06-2535-JWL-GLR, 2008 WL 1774674, at *2 (D. Kan. Apr. 16, 2008), the court granted additional time in a multi-party case because, as here, the deponent was "a key player, directly involved in the claims of [all of the parties]."

As noted above, Defendants are aware of no RMBS case that has completed fact discovery with a comparable number of defendants anywhere in the country in which plaintiff's counsel did not agree or the court order <u>at least</u> two-day depositions for at least <u>some</u> witnesses. Polubinski Decl. ¶ 2.  Indeed, in some cases, plaintiffs have agreed to two-day depositions for <u>all</u> plaintiff witnesses, with some depositions of key fact witnesses lasting for as many as four seven-hour days.  *Id.* ¶¶ 3-4.

In the parties' communications on this issue, the Bank has asserted at times that Defendants should proceed with seven hour depositions for the Credit Analysts, and only afterwards approach the Bank for its consent to permit any additional time.  That proposal would be obviously impracticable and inefficient, and prejudice Defendants' ability to conduct a fair examination of the Credit Analysts.  Each of the six Defendant groups is separately represented;

no Defendant's counsel could responsibly wait for a second day that might never arrive to ask questions specific to that Defendant.[14]  As a result, Defendants would be forced to divide seven hours among six Defendant groups to ask about 36 different purchases—to say nothing of questioning that might be common to all Defendants.  This would be both inefficient and grossly unfair to Defendants.  As many courts have recognized, where the parties are unable to reach an agreement on the appropriate length of a deposition, seeking advance relief from the court can lead to a more efficient resolution of the dispute.[15]  It is clear from the circumstances now that two days are necessary to fairly conduct these depositions, and Defendants should be able to plan their questioning with advance knowledge of the amount of time available to them.

## III.    The Conditions That FHLB Boston Seeks to Impose on the Granting of Some Additional Time Are Neither Practicable Nor Proper

In its latest communications to Defendants, FHLB Boston has conditionally offered some additional time for Defendants to depose the Credit Analysts, but has tied that still-insufficient offer of time on an agreement by Defendants to depart radically from the limit of ten depositions

---

[14] In this respect, this case differs materially from *Malec v. Trustees of Boston College,* 208 F.R.D. 23 (D. Mass. 2002), which the Bank has cited to Defendants as authority for the proposition that the default seven hours should be exhausted before seeking additional time (*see* Ex. J (Email from A. Williams-Derry to Edmund Polubinski III et al., dated September 28, 2016)).  In *Malec*, the magistrate judge concluded that the movants seeking additional time—two defendants both represented by the same counsel—should have proceeded with a seven-hour deposition first and then sought additional time if necessary.  *Malec*, 208 F.R.D. at 24.  In stark contrast, FHLB Boston has asserted several factually and legally complex claims pertaining to 36 certificates against six different defendant groups, each of which is represented by separate counsel.  The approach in *Malec* would make no sense here.

[15] *See, e.g.*, *Haldeman v. Golden*, No. 05-00810 DAE-KSC, 2007 U.S. Dist LEXIS 81410, at *13 (D. Haw. Nov. 1, 2007) (rejecting argument that it was necessary to exhaust the default 7 hours before seeking court intervention to enlarge deposition time in a case involving six defendants represented by separate counsel); *see also Baker v. PPL Corp.*, No. 1:09-CV-428, 2011 WL 1811106, at *3 (M.D. Pa. May 12, 2011) (approving in advance of deposition a 14-hour limit where the "deposition entails examination of allegations spanning many years, and involves consideration of thousands of pages of written material"); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05–1717, 2008 WL 5377979, at *3-4 (D. Del. Dec. 18, 2008) (approving in advance of depositions 14- and 15-hour limits in a case involving events covering multiple years, where thousands of pages of material were at issue).

per side under applicable rules,[16] in order to permit the Bank to take a total of <u>forty</u> depositions (up to ten <u>for each Defendant</u>).  *See* Ex. J (Email from A. Williams-Derry to E. Polubinski III, dated September 28, 2016).  Imposing such a condition on the type of targeted request for additional time made by Defendants here also would be unprecedented and unsupported.  Unlike Defendants—who surgically identified three witnesses who have not previously sat for depositions concerning the matters at issue in this case and explained to the Bank why the discovery record to date reflects good cause for an enlargement of the time to depose each one— the Bank is seeking a generic agreement that bears no relation at all to good cause or any real or perceived need.  Indeed, the Bank's request is particularly unsuitable here given the circumstances of this case, in which the Bank has received tens of thousands of pages of deposition transcripts, including for large numbers of prior days of deposition testimony for many of the same witnesses whom the Bank has identified to date as individuals whose testimony it intends to seek here.

Each Defendant has been attempting to negotiate the appropriate number of defense depositions with the Bank on an individual basis, given unique Defendant and witness-specific issues that preclude any one-size-fits-all approach to depositions of current and former employees of Defendants.  Communications between the Bank and each individual Defendant on these issues have been ongoing, and Defendants look forward to continuing those discussions; needless to say, no Defendant believes an impasse has been reached.  Defendants hope that they each will be able to reach an agreement with the Bank concerning depositions of Defendant witnesses without the need for Court intervention.

---

[16] *See* Local Rule 26.1(c) ("Unless the judicial officer orders otherwise, the number of discovery events shall be limited for each side (or group of parties with a common interest) to ten (10) depositions . . . ."); *see also* Fed. R. Civ. P. 30(d)(1).

**CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court grant their motion in its entirety, permitting two seven-hour days each for depositions of William DiFulvio, Anna Kumysh, and Mark Cogan, and award such other relief as the Court deems just and proper.

Dated:  September 29, 2016                    Respectfully submitted,


                                             Defendants:


UBS AMERICAS INC.; UBS REAL            CREDIT SUISSE (USA), INC.; CREDIT
ESTATE SECURITIES INC.; UBS           SUISSE FIRST BOSTON MORTGAGE
SECURITIES LLC; MORTGAGE               SECURITIES CORP.; CREDIT SUISSE
ASSET SECURITIZATION                  HOLDINGS (USA), INC.; CREDIT SUISSE
TRANSACTIONS, INC.,                   SECURITIES (USA) LLC; DLJ
                                      MORTGAGE CAPITAL, INC.,
By their attorneys,
                                      By their attorneys,
/s/ James R. Carroll
James R. Carroll (BBO #554426)        /s/ Jonathan Sablone
SKADDEN, ARPS, SLATE,                  Jonathan Sablone (BBO #632998)
MEAGHER & FLOM LLP                    Matthew T. McLaughlin (BBO #660878)
500 Boylston Street                   NIXON PEABODY, LLP
Boston, MA 02116                      100 Summer Street
Tel: (617) 573-4800                   Boston, MA 02110
Fax: (617) 573-4822                   Tel: (617) 345-1000
james.carroll@skadden.com             Fax: (617) 345-1300


Robert A. Fumerton                    Richard W. Clary
William J. O'Brien                    Michael T. Reynolds
SKADDEN, ARPS, SLATE,                 Lauren A. Moskowitz
MEAGHER & FLOM LLP                    CRAVATH, SWAINE & MOORE LLP
Four Times Square                     Worldwide Plaza
New York, NY 10036-6522               825 Eighth Avenue
Tel: (212) 735-3000                   New York, NY 10019-7475
Fax: (212) 735-2000                   Tel: (212) 474-1000
robert.fumerton@skadden.com           Fax: (212) 474-3700
william.obrien@skadden.com

16

IMH ASSETS CORP.; IMPAC
FUNDING CORPORATION; IMPAC
MORTGAGE HOLDINGS, INC.;
IMPAC SECURED ASSETS CORP.,

By their attorneys,

/s/ Turner P. Smith
Turner P. Smith
CURTIS MALLET-PREVOST, COLT &
MOSLE, LLP
101 Park Avenue, Suite 3500
New York, NY 10178
Tel: (212) 696-6000
Fax: (212) 697-1559

MORGAN STANLEY; MORGAN
STANLEY & CO. INC.; MORGAN
STANLEY CAPITAL I INC.; MORGAN
STANLEY MORTGAGE CAPITAL
HOLDINGS LLC,

By their attorneys,

/s/ Edmund Polubinski III
James P. Rouhandeh
Edmund Polubinski III (BBO #643548)
Daniel J. Schwartz
Scott Wilcox
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
Fax: (212) 701-5800
rouhandeh@davispolk.com
polubinski@davispolk.com
daniel.schwartz@davispolk.com
scott.wilcox@davispolk.com

Timothy P. Burke (BBO #558893)
Julie Silva Palmer (BBO #676788)
MORGAN LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
Fax: (617) 341-7701
timothy.burke@morganlewis.com
julie.palmer@morganlewis.com

17

NOMURA ASSET ACCEPTANCE
CORPORATION; NOMURA CREDIT
& CAPITAL, INC.; NOMURA
HOLDING AMERICA, INC.; NOMURA
SECURITIES INTERNATIONAL, INC.,

By their attorneys,

/s/ Stephen D. Poss
Stephen D. Poss (BBO #551760)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Tel: (617) 570-1886
Fax: (617) 523-1231

Daniel P. Roeser (BBO #675223)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
Fax: (212) 355-3333

RBS ACCEPTANCE INC. F/K/A
GREENWICH CAPITAL ACCEPTANCE,
INC.; RBS FINANCIAL PRODUCTS INC.
F/K/A GREENWICH CAPITAL
FINANCIAL PRODUCTS, INC.; RBS
HOLDINGS USA INC. F/K/A GREENWICH
CAPITAL HOLDINGS, INC.; RBS
SECURITIES INC. F/K/A GREENWICH
CAPITAL MARKETS, INC.,

By their attorneys,

/s/ Kathy B. Weinman
Kathy B. Weinman (BBO #541993)
Azure Abuirmeileh (BBO #670325)
COLLORA LLP
100 High Street, 20th Floor
Boston, MA 02110-2321
Tel: (617) 371-1000
Fax: (617) 371-1037
kweinman@collorallp.com
aabuirmeileh@collorallp.com

Thomas C. Rice
Alan C. Turner
Linton Mann III
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
Fax: (212) 455-2502

Michael D. Kibler
SIMPSON THACHER & BARTLETT LLP
1999 Avenue of the Stars, 29th Floor
Los Angeles, CA 90067
Tel: (310) 407-7500
Fax: (310) 407-7502

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 29, 2016.  An unredacted version of this document will also be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on September 29, 2016.  We have concurrently filed a motion to file this document under seal, and will file an unredacted copy of this document under seal with the Court's permission to do so.

/s/ Scott Wilcox
Scott Wilcox